[No. 10993. Department Two. September 15, 1913.]

THE CITY OF SPOKANE, *Appellant*, v. IDA V. FONNELL *et al.*, *Respondents.*[1]

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—ASSESSMENTS—BENEFITS. Access to a public park by the opening of a street is such a special benefit as will justify an assessment for benefits to adjacent property although the same does not abut upon the street to be opened.

SAME—ASSESSMENTS—LIMITS OF DISTRICTS—REVIEW. The action of commissioners in fixing the limits of assessment districts for a local improvement is conclusive on the courts in the absence of mistake, fraud or arbitrary discrimination amounting to an abuse of discretion.

[1]Reported in 135 Pac. 211.

SAME—ASSESSMENTS—BENEFITS TO CITY. Neither access to a public park by the opening of a street, nor the increase in the value of the taxable property is of such a special benefit to the city at large as to make it an abuse of discretion to refuse to assess part of the cost of the improvement against the city.

SAME — ASSESSMENTS—BENEFITS—REVIEW—EVIDENCE—SUFFICIENCY. The uniformity of an assessment upon lots abutting on a street opened by condemnation proceedings is not alone sufficient ground for setting aside the assessment roll, although the evidence tends to show that some lots were benefited more than others, when there was no such disparity as to make it essential that they be assessed in different amounts.

SAME—REVIEW—EVIDENCE—SUFFICIENCY. The *prima facie* correctness of an assessment for benefits by the opening of a street, which thereby made a public park accessible to the property assessed, is not overcome, although there was much evidence tending to show that the property was not benefited, where it was peculiarly a question of opinion as to just what distance from the park accessibility thereto should be considered sufficient basis for an assessment.

SAME—REVIEW—ARBITRARY ASSESSMENTS — EVIDENCE—SUFFICIENCY. Where the only benefit to property in an assessment district, other than that fronting upon the street to be opened, was that derived from an easier access to a public park, it is unjust and arbitrary to assess all the property at a uniform rate for each fifty-foot lot, without regard to its distance from the park, where from its physical situation it is self-evident that the benefits necessarily diminish as the limits of the district recede from the park, and real estate men, versed in values, testified to a difference varying from 50 to 100 per cent of the market value for nearby lots to as low as five per cent for lots half a mile from the park.

SAME — ASSESSMENTS — PROPERTY BENEFITED — SCHOOL PROPERTY. School house and playground property belonging to a school district are assessable for public improvements, and it is error to exclude it on the ground that it was not benefited because of the use to which it was put, where it was situated with reference to the improvement the same as other property in the district, and as real estate received the same benefit.

SAME—PROCEEDINGS—REVIEW—ESTOPPEL. Petitions for the establishment of a district do not operate as an estoppel to raise the objection that the assessment was arbitrary.

Appeal from a judgment of the superior court for Spokane county, Webster, J., entered January 24, 1912, in favor of the defendants, setting aside a local assessment, after a hearing on the merits. Affirmed.

*H. M. Stephens* and *Bruce Blake,* for appellant.

*William S. Lewis, E. W. Hand, Leander H. Prather,* and *George F. Cowan, Jr.,* for respondents.

ELLIS, J.—This is an appeal from an order of the superior court of Spokane county, setting aside an assessment roll made by the board of eminent domain commissioners to pay the cost of opening Denver street between Fifth and Celesta avenues. It is the third roll returned, the two previous rolls having been set aside and new assessments ordered by the court.

Liberty Park is a public park, located in the southeast part of the city of Spokane. It is bounded by Third avenue on the north, the Spokane & Inland right of way on the east, Arthur street on the west, and Fifth avenue on the south. Prior to the condemnation, there was no street giving access to the park from the south between Arthur and Perry streets, a distance of four blocks. Perry street at its junction with Fifth avenue, is a basaltic cliff impracticable for street uses. Under the conditions, Liberty Park was accessible to persons living to the southeast and east only through Fifth avenue by way of Arthur street at the extreme west of the park. Between Celesta avenue and Fifth avenue, is a strip of land through which Denver street was extended. It is to pay for the condemnation of an extension of Denver street through this strip from Celesta avenue to Fifth avenue, that the assessment roll was made. Denver street is a short street extending from Newark avenue on the south to Celesta avenue on the north, a distance of about 300 feet. The south end of the street is nearly level; the north end slopes abruptly down to Celesta avenue at a considerable grade. The assessment district is bounded on the north by Celesta avenue, on the south by Sixteenth avenue, a distance of something over half a mile, with varying lines on the east and west sides. The west line is approximately at a distance half way between Denver street and Arthur street. The east line through-

out most of its distance is at Helena street, two blocks east
of Denver street. We reproduce a plat from the respond-
ents' brief which we find to be approximately correct. The
heavy lines show the boundaries of the district.

A. Land condemned.
O. Grant school.
X. Bowers Play Ground.

The limits of the district, as shown by the testimony of
the commissioners, were fixed upon the theory that the prop-
erty included therein was within walking distance of the park
and that the inhabitants of the district were placed in a more
accessible situation for the enjoyment of the park. The con-
testants are the owners of various properties lying south of
the southerly end of Denver street. The parties may be
designated as appellant and respondents.

There is one general objection, going apparently to the whole assessment except as against the property abutting on Denver street itself. It is, that the matter of access to the park is not such a special benefit as justifies any assessment. This objection seems to have largely influenced the court in setting aside the roll. We think, however, that such a benefit, like any other circumstance peculiarly enhancing the use, convenience or enjoyment of property, or in any manner making its environment more desirable, is a benefit sufficient to sustain a special assessment. *In re Seattle*, 46 Wash. 63, 89 Pac. 156; *In re Harvard Avenue North*, 47 Wash. 535, 92 Pac. 410; *Spokane v. Curtiss*, 66 Wash. 555, 120 Pac. 70.

The other objections to the roll go to the limits of the district, the inclusion therein of property which it is claimed was not benefited, the exclusion therefrom of property which it is claimed was in any event equally benefited with the property included, and the claim that the assessments were arbitrary. We have frequently held that the action of the commissioners in fixing the limits of the district and in determining what property is in fact benefited in apportioning the cost of improvement, in the absence of fraud or action clearly arbitrary, will not be disturbed by the court. The commissioners being appointed for the very purpose of doing these things, their action is entitled to the same presumption which attends official action in other cases, and is conclusive in the absence of mistake, fraud or arbitrary discrimination amounting to an abuse of discretion. *In re Westlake Avenue*, 40 Wash. 144, 82 Pac. 279; *In re Seattle*, and *In re Harvard Avenue North, supra; In re Seattle*, 50 Wash. 402, 97 Pac. 444; *In re Pine Street*, 57 Wash. 178, 106 Pac. 755; *In re Jackson Street*, 62 Wash. 432, 113 Pac. 1112; *In re Fifth Avenue etc.*, 66 Wash. 327, 119 Pac. 852; *Spokane v. Curtiss, supra.* With this general principle in view, we will examine the specific objections.

I. It is first claimed that the commissioners arbitrarily refused to assess any part of the cost of the improvement

against the city of Spokane. It is argued that the park being made more accessible by the extension of Denver street was a special benefit to the city of Spokane and to its inhabitants generally. This is no more than the assertion of a general benefit such as would result from any improvement. When the whole of the voluminous evidence is fairly sifted, the only statement of a tangible benefit to the city as such is found, as stated by one of the witnesses, in the increase in value of its taxable property. This benefit is a mere reflex on the whole corporate body of special benefits to property owned by certain of its citizens. It is obvious that the improvement here in question had no such independent value to the city as a corporate entity as to make it a special public benefit. *Spokane v. Curtiss, supra.* We find nothing in this objection which would warrant the court's action in setting aside the assessment. There is no evidence of arbitrary action amounting to an abuse of discretion on the part of the commissioners in refusing to assess any of the cost of the improvement to the general fund. In the absence of such arbitrary action, their findings on this question are conclusive. *In re Fifth Avenue etc., supra; Powell v. Walla Walla,* 64 Wash. 582, 117 Pac. 389; *Northern Pac. R. Co. v. Seattle,* 46 Wash. 674, 91 Pac. 244, 123 Am. St. 955, 12 L. R. A. (N. S.) 121.

II. It is next claimed that lots abutting on Denver street were assessed only $25 a lot, without regard to the actual special benefits which they received from the improvement. The assessment roll places an assessment of $25 a lot on all of the lots abutting on Denver street. From the south end of Denver street to the south end of the district the assessment is distributed uniformly at the rate of $10.75 for each fifty-foot lot. The evidence tended to show that the lots abutting on Denver street received a much greater benefit than the other lots. The question of benefits, like that of value, is one resting largely in opinion. Though the evidence tends to show that the lots on Denver street were some

of them benefited more than others, we cannot say that there was shown such disparity in benefits as to make it essential that the lots on Denver street be assessed in different amounts. We have neither the power nor disposition to control the discretion of the commissioners in making the assessment so long as that discretion is not arbitrarily exercised. We may, however, with propriety remark that the evidence strongly points to the fact that the lots on Denver street are benefited by the improvement, as compared with the lots lying further south, to a greater extent than the roll before us would indicate. The uniformity of the assessment against these lots abutting on Denver street, however, would not be alone, under the evidence as we view it, sufficient ground for setting aside the roll.

III. It is claimed that no lots except those abutting on Denver street were benefited by the assessment, and that no other lots should have been included in the district. The evidence shows that the park is made by the improvement more accessible to all of the lots included in the district. Just to what distance from the park such a benefit should be considered sufficient basis for an assessment, is peculiarly a question of opinion. There was much evidence tending to show that the lots south of Denver street are not benefited at all. There was, however, a unanimity of opinion that their access to this park was facilitated by the improvement. There was no such showing in the evidence as should be permitted to overcome the *prima facie* correctness which must be accorded to the limits of the district as fixed by the commissioners.

IV. The contention is made that, if any property south of Denver street is to be included in the district, then the assessment is unjust and arbitrary in that all property south of Denver street within the district is assessed at the rate of $10.75 for each 50-foot lot, without regard to its distance from the park. The only benefit to any of the lots is obviously that derived from an easier access to Liberty Park. As

testified by one of the commissioners "that is the only benefit we could possibly figure out." When we consider the purpose of the condemnation, the nature of the locality and the location of these lots, this testimony is convincing. From the very physical situation the possible benefit was and could be only that derived from an easier access to the park, and it is self-evident that this benefit necessarily diminishes as the limits of the district recede from the park. All of the lots specially benefited in any manner are benefited, it is true, in the same manner; that is, the benefit to all is of the same kind, but there is a manifest difference in the degree of the benefit as between lots nearer and those further away from the park. As might be expected, this fact is reflected in the evidence as to the benefits tested by the actual effect on the market value. Various witnesses, real estate men versed in values, testified that the property on Denver street would be benefited by the improvement from 50 per cent to 100 per cent of their market value, while certain lots further away would be benefited as they recede therefrom from 50 per cent to 5 per cent of their value. As we have said, the question of benefits like any other phase of the inquiry, as to values, is largely a matter of opinion, but even opinion evidence must be tested by its inherent probability. The evidence furnished by the *prima facie* correctness of the roll, that lots over one-half a mile from the park are benefited to the same extent by increased access to the park as lots very much nearer, is too inherently improbable to stand as against the positive evidence to the contrary. Upon this ground, we think the trial court was justified in setting aside the roll and ordering a reassessment.

V. The commissioners excluded from the district the Grant school property, owned by school district No. 81, and the Bowers Play Ground, owned by the city of Spokane for play ground and amusement purposes. These properties were excluded for the sole reason that the use to which they

are put and their value for that use would not be enhanced
by reason of access to the park. We have held that where
school property is situated with reference to the improve-
ment the same as other property within the district, it is sub-
ject to assessment. *In re Howard Avenue North*, 44 Wash.
62, 86 Pac. 1117, 120 Am. St. 973. We have also held that
no part of the cost of such improvement can be assessed
against a public park, when the constitutional debt limit of
the city has been exceeded. *Powell v. Walla Walla, supra.*
It is evident that the school property and the play ground,
considered merely as real estate without regard to their use
for school and amusement purposes, are benefited in the same
manner and to the same extent by the improvement as the
property within the district adjacent thereto. There is no
claim that the assessment of the play ground would create a
debt beyond the constitutional limit. These properties should
be included in the district and assessed.

The appellant offered in evidence petitions to the city
council signed by certain of the respondents requesting the
improvement. These were excluded, improperly as we think,
but their admission could not have changed the result. They
would go only to establish an estoppel to deny some benefit.
They could not operate as an estoppel to assert that the as-
sessments were arbitrary in amount.

Summarizing, we conclude that the special benefits con-
ferred by access to the park are sufficient to sustain the as-
sessment against all property so especially benefited to pay
for the improvement; that no arbitrary action or abuse of
discretion in refusing to assess any part of the cost of im-
provement to the city was shown; that the limits of the dis-
trict were not shown to be so arbitrary either as to inclusion
or exclusion of property as to require a modification except
so as to include the school property and play ground; but
that the assessment of all property south of Denver street
at the same amount for each 50-foot lot without reference

to its distance from the park was so essentially arbitrary as to require a reassessment. The order of the trial court is therefore affirmed.

CROW, C. J., MAIN, and FULLERTON, JJ., concur.