[No. 22094. Department One. February 6, 1930.]

*In the Matter of the Assessment for the Improvement of* SIXTH AVENUE *(Denny Hill Regrade No. 2).*

[1]Reported in 284 Pac. 738.

*Thomas J. L. Kennedy, J. Ambler Newton,* and *Walter L. Baumgartner,* for appellant.

*Allen, Froude, Hilen & Askren,* for respondents Hefferman *et al.*

*Preston, Thorgrimson & Turner,* for respondents Bowman *et al.*

*Kerr, McCord & Ivey, Herr, Bayley, Croson & Innis,* and *Philip D. Macbride,* for respondents Snowden *et al.*

*Bronson, Jones & Bronson,* for respondents Lang *et al.*

*Lewis & Black,* for respondent Real Estate Improvement Co.

*Allen & Walthew,* for respondents Danz *et al.*

*Arthur G. Dunn, Jr.,* for respondent Dunn.

*Max Hardman* and *Bogle, Bogle & Gates,* for respondents Danziger *et al.*

*Trefethen & Porterfield,* for respondents Trefethen *et al.*

BEALS, J.—From a judgment canceling certain assessments and reducing others, as contained in the Denny hill regrade No. 2 physical improvement assessment roll, the city of Seattle appeals.

Prior to 1906, Denny hill, in the city of Seattle, rose to a considerable elevation from a point just north of Pine street, and extended thence a considerable distance in a general northerly direction. In 1906, by an improvement project known as Denny hill regrade No.

1, the southerly portion of the hill or ridge was removed, and the property brought down to grade. A considerable portion of the elevation, however, was left in place, and the project regrade No. 2, above referred to, was initiated for the purpose of removing the remainder of the hill which, ever since the first regrade, has stood an unsightly, impassable and extremely inconvenient barrier, preventing the orderly and logical improvement and development, not only of its own area, but of other portions of the city.

The improvement now in question, the regrade proper, is bounded on the south by Virginia street, on the north by Broad and Harrison streets, on the west by Fifth avenue and Fifth avenue north, and on the east by Ninth avenue north and Westlake avenue. At Bell street, the hill now being cut away stood approximately eighty feet above the level of Fifth avenue, the elevation varying from that height down to, at some points, approximately the level of existing streets, the specifications for the improvement providing, in a few instances, for a fill of a few feet to make the most convenient grade. The improvement is of great magnitude and requires the removal of a vast quantity of earth.

The assessment which is the subject-matter of this proceeding was spread over two groups or classes of property, the first comprising the district actually regraded and property abutting thereon, called the abutting district, and the second or enlarged district, comprising surrounding property, which was deemed specially benefited by the improvement.

On appeal to the superior court by the owners of certain tracts in the two districts, the trial court rendered judgment materially reducing the assessments levied against six appealing tracts in the abutting district, and canceling the assessment as against all of the

appealing properties situated in the enlarged district and located south of Denny Way. From the judgment reducing and canceling these assessments, the city of Seattle appeals.

■ Respondents move to dismiss the city's appeal, upon the ground that this court is without jurisdiction to entertain the same. The method provided by statute for judicial review of special assessments levied as was the one in question here is found in Rem. Comp. Stat., § 9374, the latter portion of which section reads as follows:

"An appeal shall lie to the supreme court from the judgment of the superior court, as in other cases: Provided, however, that such appeal must be taken within fifteen (15) days after the date of the entry of the judgment of such superior court; and the record and opening brief of the appellant in said cause shall be filed in the supreme court within sixty (60) days after the appeal shall have been taken by notice as provided in this act. The time for filing such record and serving and filing of briefs in this section prescribed may be extended by order of the superior court, or by stipulation of the parties concerned. And the supreme court, on such appeal may correct, change, modify, confirm or annul the assessment in so far as the same affects the property of the appellant. A certified copy of the order of the supreme court upon such appeal shall be filed with the officer having custody of such assessment-roll, who shall thereupon modify and correct such assessment-roll in accordance with such decision."

Respondents urge that as by the latter portion of the section above quoted, this court is vested with jurisdiction to "correct, change, modify, confirm or annul the assessment in so far as the same affects the property of the appellant," no appeal may be taken by the municipal corporation on whose behalf the asssessment is levied from a judgment of the superior court

reducing or canceling an assessment, as such a judgment does not affect "the property of the appellant," and therefore does not come within the terms of the statute providing for an appeal to this court.

The section above referred to provides that "an appeal shall lie to the supreme court from the judgment of the superior court, as in other cases." While the section providing for appeals to the superior court and to this court is somewhat inartistically drawn, we are satisfied that the same vests this court with jurisdiction to hear and determine appeals from judgments of the superior court, "as in other cases," and that the portion of the act upon which respondents rely in making their motion to dismiss this appeal does not operate to limit the appellate jurisdiction of this court, so as to preclude appeals by municipalities from judgments reducing or canceling assessments.

We hold that, by the section above referred to, this court is vested with jurisdiction to entertain such an appeal as is here presented.

Respondents' motion to dismiss the appeal is denied.

We shall, in the first place, discuss the questions presented which affect the properties located within the abutting district. As to these properties, the trial court eliminated from the assessments against the same, as shown on the assessment roll as confirmed by the city council, so much of the assessment as was levied for the physical regrading of the streets as directed by the ordinance providing for the improvement, and confirmed that portion of the assessment levied on account of paving, sidewalks, and improvements of a similar nature, of which assessments, as confirmed, the respondents interested in the respective appealing properties contained within the abutting districts do not complain.

The question presented upon this branch of the case

464

is whether or not the properties concerned are liable to an assessment for the physical regrade of the streets within the area to be improved, in the amounts in which these properties were respectively assessed upon the roll as confirmed by the city council, or in any amount whatsoever.

On appeal of certain property owners, whose lands were assessed on the roll prepared by the eminent domain commission of the city of Seattle, on the condemnation by the city of the right to make the improvement which is the subject-matter of this proceeding, this court held that the assessments against the properties of the appellants in that proceeding had been levied and fixed on a fundamentally wrong basis, that no special benefit of any kind would accrue to the appealing property, and that such benefits as would accrue from the condemnation were general benefits for which the property should not be assessed: *In re Taylor Avenue Assessment,* 149 Wash. 214; 270 Pac. 827.

In paragraph I of the judgment appealed from in the case now before us, the trial court referred to the decision of this court above cited (which will be herein referred to as the *Taylor Avenue* opinion) in the following language:

"The assessment roll in this case for the physical improvement of Sixth avenue *et al.* (Denny Hill No. 2) embraces practically the same territory as was assessed in the condemnation proceeding for the right to change the grade of said streets and for the taking of certain property for the widening thereof, which assessment roll was before the Supreme Court in the case of *In re Taylor Avenue,* (149 Wash., page 214) and it further appearing to the court that the basis of assessment for the physical regrading here before the court is the same as the basis of assessment which was before the court in said cause above referred to, which assessment was annulled by said court; now, therefore, the court finds that none of the property described in

this paragraph is specially benefited by the regrading of the streets in question and that the assessments thereon are arbitrary, capricious and on a fundamentally wrong basis, . . .''

and then proceeded to cancel the assessment as to the then appealing properties in the enlarged district and reduce the same as against two of the appealing properties (the ''Westlake Market'' and ''Nestor'' tracts) in the abutting district.

Succeeding paragraphs of the judgment reduced the assessment as to other properties in the abutting district, and made some other adjustments with which we are not now concerned.

In the course of the *Taylor Avenue* opinion, this court referred to four lots known as the ''Westlake Market'' property (which property lies within the abutting district as shown on the assessment roll in this proceeding, and which property is one of those freed by the trial court by the judgment now before us for review, from assessment for the physical regrade), and concluded that that property was not specially benefited by the improvement consisting of the condemnation for which that property had been assessed upon the assessment roll then before the court for review.

In the case at bar, the trial court seems to have been of the opinion that the decision of this court in the *Taylor Avenue* proceeding was controlling as to the ''Westlake Market'' property, and therefore canceled the assessment for the physical regrade of the streets within the district in question as against that property. The trial court was also of the opinion that it logically followed that, as the situation of the other appealing tracts within the abutting district with regard to the improvement was practically the same as that of the ''Westlake Market'' property, the assess-

ment against these tracts for the physical regrade should also be canceled, and entered judgment accordingly.

Respondents argue that this court, in considering the questions presented on this appeal, should follow the opinion rendered in the *Taylor Avenue* case, and that by that decision the law of this case was established. It is of course true that, in this proceeding, entirely new evidence was taken, and the case is before us upon a different record. It is evident that, in so far as this court, in the *Taylor Avenue* opinion, laid down any rules of law which are properly applicable to the state of facts now before us for decision, that opinion should be followed; but it is equally true that the opinion of this court on the former appeal is not *res adjudicata* here, and that this appeal must be decided upon the record now before us, and that, if such record requires a different conclusion than that reached by a department of this court on the prior appeal, that decision is controlling only in so far as it lays down principles of law properly applicable to the facts shown by the record herein.

On the appeal from the judgment confirming the assessment roll as prepared by the eminent domain commissioners (the *Taylor Avenue* case), it appeared that the assessment roll appealed from had been approved by only two of the three commissioners; that, in preparing the assessment roll, the commissioners took into consideration certain matters such as the proposed building of a new bridge over Lake Union, which improvements it was evident might never be accomplished; and that, for that reason and other reasons stated in the opinion, the commissioners, in making up their roll, had proceeded upon a fundamentally wrong basis. Approximately a year and a half intervened between the hearing in the superior court upon the

eminent domain assessment roll and the hearing upon the roll now before us.

The questions presented by the objections to the two different assessment rolls, while in many points similar, are in fact not identical, as the first proceeding had for its object the levying of an assessment for the purpose of raising funds with which to pay for the condemnation of the private property and rights necessary to the making of the improvement, while the pending proceeding has for its object the levying of an assessment to pay for the physical improvement of the property or the actual accomplishment of work, the right to perform which was obtained by the condemnation which was the basis of the assessment roll before us in the *Taylor Avenue* case.

It might happen that, in some instances, the controlling facts on two such questions would be identical, but such is not necessarily the case. It has been held that the award of damages to property in a proceeding to condemn land for the opening of a street, which award precluded any assessment for benefits on account of the condemnation, was not a bar to a subsequent assessment against the property for the physical improvement of the land condemned. This court has said:

"This section [referring to section 15 of the act of March 13, 1907, referring to local improvements, Laws 1907, pages 316, 321] we think, does no more than provide for offsetting benefits against damages where damages are claimed to abutting and adjoining property for the taking of property for street purposes or for grading or otherwise improving a street. It does not require that the city shall, where it condemns land for a street, provide for a finished street in that proceeding, and determine once for all the amount of damages or benefits abutting or adjoining property will sustain because of the improvement. On the contrary, we think the city may divide the proceedings into as

many steps as the nature of the case may require; that is to say, it can, in one proceeding, lay out the street and condemn the necessary land needed therefor; it can, in another proceeding, grade the street; and in still another, cause it to be paved; and after this is done, it may regrade and repave it as often as the street requires grading or repaving. Of course, in any one of these proceedings, land cannot be assessed to pay the costs of making the specific improvement, when a jury determines that such land will be damaged by reason of the improvement over and above all benefits accruing to the same. But the rule applies only to the particular improvement in question. One such finding does not bar the right. of the city to assess the property for benefits accruing from a subsequent improvement. This is all that the city has done in the matter before us. In the first instance, it condemned the land for the street, and paid the appellants not only for the value of the land, but for all damages that accrued to the remainder of the land by reason of the taking. In the second instance, it graded and planked the street, and it seeks to collect from the appellant's land a proportional share of the benefits the grading and planking of the street cause to accrue to such land. The two proceedings are entirely distinct, and clearly, one cannot be a bar to the other." *Martenis v. Tacoma,* 66 Wash. 92, 118 Pac. 882.

The following opinion of this court is also in point upon this question: *In re Queen Anne Boulevard,* 77 Wash. 91, 137 Pac. 435.

It appears that the cost of the physical improvement, paving, sidewalks, etc., except the regrade, was, by the assessment roll as confirmed by the city council, charged to the lots abutting the improvement according to the cost of the improvement to each lot; but as to the regrade, the cost per lot was ignored, and the expense was apportioned throughout the abutting district and the enlarged district, 92.2 per cent to the former and 7.8 per cent to the latter. The total cost of the improvement, as estimated by the city engineer,

was $1,672,859.93, of which $1,095,484.82 was the estimated cost of the regrade, $577,375.11 being the estimated cost of the sidewalks, paving, etc.

Of the cost of the regrade, $85,570.95 was assessed against the property in the enlarged district, the balance being assessed against the property within the abutting area.

Respondents contend, first, that their property was not so specially benefited as to justify any assessment whatever against the same; and, second, that, if the improvement does result in some special benefit to their property, the same was charged with a disproportionately large share of the cost. They also urge that the assessment roll was cast on a fundamentally wrong and arbitrary basis, in that, in spreading the same, certain vital elements were ignored, and certain improper factors were considered.

Respondents rely upon the finding of the trial court contained in paragraph 2 of the judgment, in which the court found that it appeared from the evidence that certain of the tracts with which we are concerned received no special benefit by reason of the physical regrade of the streets within the improvement district, and contend that it is the duty of this court not to disturb this finding unless this court should determine that the evidence clearly predominates against the same.

Upon the record before us, it is evident that the trial court based its ruling largely upon the decision of this court in the *Taylor Avenue* case. It is therefore evident that the findings of the trial court are in this instance not entitled to exactly the same weight as are findings based solely upon disputed evidence. It is manifest that the trial court was of the opinion that, at least as to the "Westlake Market" property, the holding of this court in the *Taylor Avenue* case was

controlling, and with that as a basis, the court was convinced that the exoneration of certain other tracts in the immediate vicinity from liability for the cost of the regrade necessarily followed, as the situation of the respective properties in relation thereto appeared to the court to be practically identical.

It appears that the assessment roll now before us, as originally cast by the city engineer for consideration by the city council, although prepared after the rendition by this court of the opinion in the *Taylor Avenue* case, closely followed the assessment roll which was before the court in that proceeding, as prepared by the board of eminent domain commissioners. The city council, in passing upon the assessment roll now under consideration, modified the same by reducing to a considerable extent the amount assessed against the enlarged district, with the result that the amount to be raised was prorated between the two districts in the percentages above set forth.

The respondents whose properties we are now considering contended that their lots should not be assessed in any considerable amount for the cost of removing dirt from certain blocks of streets upon which their respective properties do not front. The property of one respondent, located at the corner of Sixth avenue and Virginia street, was on the assessment roll as confirmed by the city council, assessed for the physical regrade in an amount equal to $90 per front foot, the highest rate in the district, although no dirt was to be removed from the streets upon which this property fronts. Respondents' witnesses found only general benefits resulting from the improvement to the property within the enlarged district, and, generally speaking, to respondents' properties within the abutting district, although some witnesses testifying on behalf of respondents seem to admit that at least some

benefits which may be held to be special in their nature will result from the improvement to certain of the appealing properties. On the other hand, witnesses on behalf of appellant testified that the properties within the abutting district, as well as those within the enlarged district, would be greatly benefited by the regrade, and the following physical improvement of the streets.

It is true, as contended by respondents, that the only legal basis for a special assessment against real estate is a finding that the improvement for which the assessment is levied will result in some special benefit to the property assessed, and the assessment cannot exceed in amount the special benefits to the property, this irrespective of the size of the property, the value thereof, or the income produced thereby.

In determining these questions, certain well established principles of law must be borne in mind. In the first place, an assessment roll, as established by the legislative authority of a municipality, will, when attacked in court, be considered as *prima facie* correct and in accord with the principles of law governing the preparation of such a roll, and the burden rests upon those attacking the same. *Spokane v. Fonnell,* 75 Wash. 417; 135 Pac. 211; *Viegle v. Spokane,* 78 Wash. 359, 139 Pac. 33; *Moore v. Spokane,* 88 Wash. 203, 152 Pac. 999; *In re Johnson's Appeals,* 148 Wash. 140, 268 Pac. 164.

Neither will the court merely substitute its opinion for the judgment of the municipal officers who are authorized by law to spread the assessment and whose action is the subject of attack in the courts. In the absence of arbitrary or capricious action, or fraud, or a showing that the assessment was cast upon a fundamentally wrong basis, the roll will be confirmed. *Powell v. Walla Walla,* 64 Wash. 582, 584, 117 Pac.

389; *Great Northern Railway Co. v. Seattle,* 73 Wash. 576, 132 Pac. 234.

This court has also held that the question of whether or not a specific property is specially benefited by a local improvement is a question of fact, and that such a hearing as this is a trial *de novo* before this court. *Horton Investment Co. v. Seattle,* 94 Wash. 556, 162 Pac. 989, L. R. A. 1918E 194.

We are convinced that the judgment of the trial court relieving certain properties within the abutting district from liability to assessment on account of the regrade cannot be upheld. Upon the record in this proceeding, we hold that the appellants below who owned property within the abutting district, respondents here, failed by the testimony introduced on their behalf to raise the burden which rested upon them to show that their properties were not specially benefited by the regrade. In our opinion, the evidence, considered as a whole, shows affirmatively that these properties are specially benefited by the regrade, and in this statement we include the "Westlake Market" property, notwithstanding the ruling in the *Taylor Avenue* case to the effect that this tract was not specially benefited by the condemnation and could not be assessed to pay any portion of the cost thereof.

The question as to the amount of assessment to be levied against the respective tracts in the abutting district owned by the respondents is one of even greater difficulty. Were we now, in the first instance, casting the assessment roll, it is possible the result of our labors would differ materially from the roll before us. The law, however, imposes upon us no such burden. Considering the questions to be decided from the standpoint of the authority vested in us as an appellate court, we are unable to find that the assessments against these properties, as contained in the roll ap-

proved by the city council, exceed the special benefits accruing thereto. The tracts are of great value, the improvement consists of a tremendous physical change in the contiguous terrain, the cost of the regrade is very considerable, and exactly what its effect will be in the future upon property values in the vicinity, no man can now determine with any degree of certainty.

We can only say that, from the record before us, we hold that the assessments, as levied, do not exceed the special benefits accruing to the respective properties from the regrade. In reaching this conclusion, we have considered all the testimony, including that introduced on behalf of respondents to the effect that some of these properties will actually be damaged by the regrade, because of the fact that the same will bring into active competition therewith a large number of lots and blocks which prior to the regrade were not available. This argument is intriguing, but not convincing. We are satisfied that the improvement will result in very considerable special benefits to the properties of respondents lying within the abutting district.

As to the properties within the enlarged district, we are satisfied that the record shows that they are not specially benefited by the improvement, and that the judgment of the trial court relieving them from assessment for the improvement was correct and should be affirmed. While the evidence is extremely conflicting, we hold that, as to such properties, the respondents concerned in that phase of the litigation successfully bore the burden imposed upon them by law, in attacking the assessment roll as confirmed by the city council.

The judgment of the trial court relieving the six tracts within the abutting district from assessment for the physical regrade is reversed, with instructions to establish as to such properties the assessments against

474

the same as contained in the assessment roll as confirmed by the city council.

The judgment of the trial court relieving from assessment certain properties within the enlarged district is affirmed.

MITCHELL, C. J., TOLMAN, PARKER, and MILLARD, JJ., concur.