[No. 34297. Department One. May 8, 1958.]

*In re the Confirmation of* LOCAL IMPROVEMENT NO. 6097 *in the City of Seattle.*[1]

[1]Reported in 324 P. (2d) 1078.

*A. C. Van Soelen* and *C. V. Hoard,* for appellant.

*Wright, Booth & Beresford,* for respondents.

HUNTER, J.—This is an appeal from a judgment of the superior court canceling and annulling *in toto* the assessment in the amount of $1,260.64 levied upon the property of Roger C. Grout and Cora A. Grout, his wife, by the city of Seattle in local improvement district No. 6097.

For many years, Roger C. Grout and his wife have been the owners of lot 14 Outlook addition in Seattle, Washington, on which their home is situated. The terrain is rough, but the property in this area is valuable as view property. The lot is bounded on the north by west Englewood street and on the west by 47th avenue southwest. The east side of 47th avenue, where the Grout's property is located, is 20 to 30 feet higher than the west side of the street. However, the Grouts had access to 47th avenue by way of a narrow, winding roadway which ran along the north boundary of their property and intersected with 47th avenue by approximately a 180 degree turn. This roadway was not a platted street and could not be used at many times due to weather conditions.

The Grouts joined in a petition with some of their neighbors requesting grading and paving of 47th avenue southwest, construction of sidewalks, watermains, and fire hydrants. When informed of the estimated assessment of $1,225.12 to be levied upon their property, the Grouts wrote a letter of protest to the city council. However, at the hearing on this matter, the Grouts withdrew their protest after they were informed that their protest might prevent the improvement project.

In order to complete the project, it was necessary for the district to make a deep cut in the land in front of the Grouts' property because of the difference in levels of properties abutting 47th avenue southwest. This avenue had been dedicated by the platter as a street 60 feet wide, and the grade was established thereafter in a condemnation action. When the project was completed, the access of the Grouts was removed when the narrow roadway had to be blocked off. The bank in front of their home is approximately 45 degrees and unprotected.

The assessment roll of the district, as published, assessed $1,260.64 against the Grouts' property. They filed written objections with the city council against the assessment roll. Upon confirmation of the roll, they gave notice of appeal to the superior court.

During the trial, the Grouts contended that their property had not been specially benefited by the project, and, in fact, the blocking off of access and removing of lateral support resulted in a diminution of the market value of their property in the amount of thirty-five hundred dollars. Mr. Grout and his expert witness, Paul W. Petrick, a realtor and appraiser, testified that the property had decreased in value; whereas, the district's expert witnesses, Mr. Grad and Mr. DeMeyer, also realtors and appraisers, testified that the property had been specially benefited approximately in the amount of the assessment.

At the conclusion of the trial, the court found that, in improving 47th avenue southwest, the city was fixing and establishing an original grade, and therefore the Grouts were not entitled to any damages for the change in the

grade. The court found further that the Grouts' property, immediately after the completion of the improvement work, did not exceed the reasonable market value of their property prior to such work and concluded that the property had not received any benefit. The assessment levied against their property was canceled and annulled. This appeal by the city of Seattle followed.

The appellant has made six assignments of error, but in substance they present only one question for our determination: whether the respondents' property was specially benefited from the improvement.

 The rules of law controlling in this case are well established and were last stated by this court in the case of *In re Schmitz,* 44 Wn. (2d) 429, 268 P. (2d) 436 (1954), as follows:

"Under the local improvement district statutes, only that portion of the cost of the local improvement which is of special benefit to the property can be levied against the property. *In re California Avenue,* 30 Wn. (2d) 144, 190 P. (2d) 738 (1948).

"Property not benefited by local improvements may not be assessed, and special assessments for special benefits cannot substantially exceed the amount of the special benefits. *Viegle v. Spokane,* 78 Wash. 359, 139 Pac. 33 (1914); *In re Shilshole Avenue,* 94 Wash. 583, 162 Pac. 1010 (1917); *In re Sixth Avenue,* 155 Wash. 459, 471, 284 Pac. 738 (1930); *Hargreaves v. Mukilteo Water Dist.,* 43 Wn. (2d) 326, 261 P. (2d) 122 (1953); and cases cited.

"The amount of the special benefits attaching to the property, by reason of the local improvement, is the difference between the fair market value of the property immediately *after* the special benefits have attached, and the fair market value of the property *before* the benefits have attached. *Overbridge Realty Corp. v. Hackensack,* 13 N. J. Misc. 702, 180 Atl. 666 (1935).

"The fair market value

" ' . . . means neither a panic price, auction value, speculative value, nor a value fixed by depressed or inflated prices. We have defined it as the amount of money which a purchaser willing, but not obliged, to buy the property would pay an owner willing, but not obliged, to sell it, taking into consideration all uses to which the property

is adapted and might in reason be applied.' *Donaldson v. Greenwood,* 40 Wn. (2d) 238, 252, 242 P. (2d) 1038 (1952)."

The question to be resolved is one of fact. Was there any increase in the market value of respondents' property resulting from the improvement?

The value of the improvement in the amount of $1,260.64, as listed in the assessment roll, is *prima facie* correct. In the case of *In re Sixth Avenue,* 155 Wash. 459, 284 Pac. 738 (1930), we stated:

"An assessment roll, as established by the legislative authority of a municipality, will, when attacked in court, be considered as *prima facie* correct and in accord with the principles of law governing the preparation of such a roll, and the burden rests upon those attacking the same. *Spokane v. Fonnell,* 75 Wash. 417, 135 Pac. 211; *Viegle v. Spokane,* 78 Wash 359, 139 Pac. 33; *Moore v. Spokane,* 88 Wash. 203, 152 Pac. 999; *In re Johnson's Appeals,* 148 Wash. 140, 268 Pac. 164."

The burden was, therefore, upon the respondents to show otherwise, by the preponderance of the evidence. In considering the opinions of expert witnesses, we are in an equal position with the trial court, as veracity and credibility of the witnesses are not involved. *In re Schmitz, supra.*

Paul W. Petrick, expert witness for the respondents, testified that the fair market value of the property before the improvement was $14,500; that the fair market value immediately after the improvement was $11,000. The first expert witness for the appellant, Ed Grad, testified that the fair market value of the property immediately prior to the improvement was $11,500; that after the improvement it was $12,750. The second expert witness for the appellant, Norman DeMeyer, testified that the fair market value of the property immediately prior to the improvement was $11,500, and after the improvement $12,750.

It is not necessary to detail the qualifications of these witnesses. Suffice it to say they are experienced realtors and appraisers and qualified to express an opinion. The factors considered by these witnesses, in arriving at their expert

opinions as to the fair market value of the property before and after the improvement, are here decisive in evaluating the weight to be given their testimony.

Ed Grad, appellant's expert witness, testified in part:

"The first thing a prospective purchaser would want to know is when that street would be improved, who was going to pay for it, and how much it would be, *and they would then base their estimate of value or offer on what they thought would be done to that street or should be done to it.*" (Italics ours.)

On the other hand, Paul W. Petrick, respondents' expert witness, gave little consideration to these factors as affecting the price which a prospective purchaser would be willing to pay for the respondents' property. He testified on re-direct examination, in part, as follows:

"Q. Mr. Petrick, in buying and selling property throughout the City there is very often in the title report a little statement down at the end, 'subject to the rights of the City to make cuts, grades, slopes,' and so forth? A. That's right. Q. As a practical matter, people dealing with properties, does that affect generally what the willing buyer and the willing seller are willing to pay for the property? . . . A. Well, in the hundreds of deals that we have made in our office I don't believe it was ever a governing factor in the dealing one way or the other. *It was often asked to be explained and I don't know that I ever did a good job of that. It is rather indefinite. It gives them the right to do certain things but we can't explain to them what is going to happen to their property. But it was never a determining factor in a sale to my knowledge.*" (Italics ours.)

Appellant's expert witness Grad assumed, as a result of the grade having been established by the condemnation proceedings in 1925, that a prospective purchaser would be charged with knowledge that the street would be improved to the extent of the physical condition it is now in today; in effect, that the market value of the property before the improvement would be the same as if the cut had been made at that time. This reasoning is unsound.

A willing buyer cannot be charged with notice that a street improvement will be made before a local improvement district comes into existence. This is beyond the

knowledge of reasonable certainty and is pure speculation, until the happening of such an event. This is graphically demonstrated by the fact that no improvement was made here until approximately forty years after the grade was established. On the other hand, a willing buyer would be entitled to presume that any improvement to the street abutting his property would have to result in an increase in the market value thereof, before any assessment could be levied thereon. In this instance, Mr. Grout testified he believed the improvement would be a two-level street and that his access would not be cut off. The witness Harold E. McMorris, a civil engineer called by the appellant, testified in reference to a two-level street: *"It is feasible but not practical. We stay away from the double roadways whenever we can"*; all of which raises the question of ability "to stay away from the double roadways" and points up the uncertainty of what may, or may not, have happened to the access of respondents' property by virtue of the street improvement.

The second expert witness for the appellant, Mr. De-Meyer, testified on direct examination as follows:

"Q. You each had the benefit of the other's views? A. Yes, that is correct. Q. And the figure you reached was your joint opinion? A. That is correct. That is why they are both the same."

■ The error committed by Mr. Grad, under these circumstances, would be reflected in Mr. DeMeyer's appraisal. The trial court was entitled to disregard the testimony of appellant's experts, since they have proceeded on a fundamentally wrong basis in arriving at their opinions. See *In re Schmitz, supra.*

■ The appellant further contends that the respondents are estopped to challenge the assessment after petitioning the city for the improvement with the remaining abutting property owners in the district. This contention is without merit. It would amount to a denial of a statutory right given to petitioners in a local improvement district to question the amount of the assessment. See RCW 35.44-.080; 35.44.090; 35.44.100; 35.44.110; 35.44.190; and 35.44.200.

Appellant finally contends that statements made by the trial court indicated bias, and that it was denied a fair trial. This is not supported by the record. The testimony preponderates that the respondents' property was not specially benefited by the improvement. The trial court was correct in annulling the assessment against respondents' property.

The judgment is affirmed.

HILL, C. J., MALLERY, FINLEY, and OTT, JJ., concur.

[1]Reported in 324 P. (2d) 1096.