[No. 1684-2.    Division Two.    March 26, 1976.]

JAMES CAMMACK, ET AL, *Appellants*, v. THE CITY OF PORT ANGELES, *Respondent.*

*John R. Rutz* (of *Niichel & Cossel*), for appellants.

*Stanley A. Taylor* and *George L. Wood, Jr.* (of *Conniff, Taylor & Behrhorst*), for respondent.

PEARSON, J.—This appeal involves the extent of the court's authority to review a local improvement district

assessment levied by the City of Port Angeles against plaintiff's property for street and storm drainage improvements.

The LID was initiated at the request of several residents, including plaintiff,[1] of the Canyonedge Addition adjacent to the southern boundary of Port Angeles. The addition consists of some 38 lots of various sizes and shapes.

Ordinance No. 1828, which established the LID, contained an estimated cost of $119,543.59 and provided:

> Such assessments shall be made against the property . . . in accordance with the special benefits said property will derive from said improvements, without regard to the zone and termini method.

The LID included construction and installation of storm sewers and the grading, ballasting, and paving of the streets, including construction of curbs and gutters throughout the subdivision.

The city council determined that each lot would be assessed in proportion to its size, computed by a square footage method. Plaintiff's lot was considerably larger than most of the lots in the LID. As a consequence the $7,274.61 assessment was one of the highest assessments levied.

Prior to the hearing before the city council on the assessment, plaintiff filed written objections contesting both the method and the amount of the assessment levied against his property. The minutes of the hearing conducted pursuant to RCW 35.43.150 show only that plaintiff and several other property owners within the LID appeared and "verbally objected to their assessments." There is no indication in the hearing minutes that any evidence was presented concerning the question of how the market value of plaintiff's property was affected by the assessment. The minutes do show that "the Public Works Director's certificate of evaluation and outstanding assessments and certificate of mailing of notices on hearing were read in full." This certificate of evaluation was not made a part of the record brought to

---

[1] The informal request was accepted by the City and the LID was initiated by Improvement Resolution 197, dated May 21, 1974.

the superior court or to this court. We assume, however, that the certificate complied with RCW 35.43.150 and contained the public works director's evaluation of the estimated benefits to all property, including plaintiff's property, from the improvements. The minutes reveal that after a discussion of the assessments the protestors appeared to represent only 16 percent of the property affected by the assessment, and the council voted 4 to 1 to proceed with the LID.

On appeal to the superior court, plaintiff testified that his lot (17) was the largest and most choice lot in the entire subdivision and was selected by him because its higher elevation provided a view of the Strait of Juan De Fuca across to Victoria. He also stated that in constructing a home on lot 17, he encountered serious erosion and drainage problems. In the winter months "we experienced nothing but a muddy situation [because of the poor drainage] and during the summer months nothing but a dusty, dirty situation [because of the unimproved roads]." These factors caused plaintiff to participate in the request for the LID improvements.

Plaintiff contended, however, that the assessment against his lot was more than double the value of the special benefit to his property, and consequently was substantially excessive and levied on a fundamentally wrong basis.

In support of his contentions plaintiff offered in evidence the portions of the city council records mentioned above and a map showing the improvements in relation to each of the 38 lots. In addition, plaintiff testified that in his opinion his particular lot was monetarily benefited in the sum of $1,500, but he was willing to assume $3,500 of the assessment. Plaintiff was not a qualified real estate appraiser. Plaintiff's expert, who was a qualified appraiser, expressed his opinion on the market value benefits most reluctantly. At one point, he testified he could not put a value on the improvements. At another point, he testified that a purchaser might pay $51,000 for the property otherwise worth $47,500, but he conceded that since the assessment was

payable over 10 years or more, the impact of the assessment on a prospective buyer would be difficult to determine. On cross-examination the witness conceded that a reasonable market value for the property might be $47,500, plus the assumption of the LID.

At the conclusion of plaintiff's evidence, the trial court granted the City's motion to dismiss the appeal. The order of dismissal subsequently entered found and concluded that plaintiff did not establish the LID was founded upon a fundamentally wrong basis, or that the amount of the assessment was arbitrary or capricious. RCW 35.44.250.[2] Specifically, the order recited that plaintiff did not "establish by a preponderance of the evidence that the plaintiffs' property will not receive special benefits commensurate with the amount levied."

On appeal to this court plaintiff contends it was error to dismiss the action at the conclusion of his case because he made a prima facie showing that the assessment was substantially excessive as to his property; the fact that it was substantially excessive also established prima facie that the method of assessment was fundamentally wrong. Since there was no other evidence before the trial court to establish the validity of the assessment, plaintiff contends it was error to dismiss his appeal.

Plaintiff's contentions require a consideration of two questions pertaining to appeals from LID assessments: (1) What burden of proof is upon the challenger of the assess-

---

[2]RCW 35.44.250 provides:

"At the time fixed for hearing in the notice thereof or at such further time as may be fixed by the court, the superior court shall hear and determine the appeal without a jury and the cause shall have preference over all other civil causes except proceedings relating to eminent domain in cities and towns and actions of forcible entry and detainer. *The judgment of the court shall confirm, unless the court shall find from the evidence that such assessment is founded upon a fundamentally wrong basis and/or the decision of the council or other legislative body thereon was arbitrary or capricious;* in which event the judgment of the court shall correct, change, modify, or annul the assessment insofar as it affects the property of the appellant." (Italics ours.)

ment? (2) What standard of review is the court obliged to apply in considering the validity of the assessment? Both of these questions require a general consideration of the legislative history of the local improvement statutes, RCW 35.43 and RCW 35.44. Also preliminary consideration must be given to the posture of plaintiff's appeal at the time the order of dismissal was entered.

When the sufficiency of plaintiff's evidence was challenged, the trial court had the option of either ruling as a matter of law on the sufficiency without weighing the evidence or weighing the evidence and entering findings and conclusions based thereon. *Maynard Inv. Co. v. McCann*, 77 Wn.2d 616, 465 P.2d 657 (1970). Since the trial court found and concluded that plaintiff did not "establish by a preponderance of the evidence that [his] property will not receive special benefits commensurate with the amount levied," it is likely that the court weighed plaintiff's opinion evidence and rejected it as not credible. On the basis that a trial judge may totally reject opinion evidence if he believes its foundation is not sound, we could perhaps affirm the judgment on this ground alone. *See Jarstad v. Tacoma Outdoor Recreation, Inc.*, 10 Wn. App. 551, 519 P.2d 278 (1974); *Segall v. Ben's Truck Parts, Inc.*, 5 Wn. App. 482, 488 P.2d 790 (1971); *In re Estate of Hastings*, 4 Wn. App. 649, 484 P.2d 442 (1971).

It is not totally clear, however, that the trial court did, in fact, weigh the opinion evidence and reject it. The conclusional statement that plaintiff's evidence did not show that the assessment was founded on a fundamentally wrong basis or was arbitrary or capricious suggests that the court may have accepted the evidence as true, and nevertheless found it to be legally insufficient. Accordingly, we feel obliged to consider not only what plaintiff's burden of proof was, but also what standard of review is properly applied.

The local improvement statutes as they presently exist evidence a clear policy favorable to the construction and

financing of local improvement.[3] This is best illustrated by RCW 35.43.020, which provides:

> The rule that statutes in derogation of the common law are to be strictly construed shall have no application to this and the following chapters relating to municipal local improvements but the same shall be liberally construed for the purpose of carrying out the objects for which intended.

In furtherance of this policy a strong judicial presumption was created as to the correctness of the assessment roll which placed the burden of proof upon the party challenging the assessment to establish that it was not correct. *In re Local Improvement 6097*, 52 Wn.2d 330, 324 P.2d 1078 (1958); *In re Sixth Ave.*, 155 Wash. 459, 284 P. 738 (1930).

However, from the inception of the local improvement statutes in 1911 until a significant amendment in 1957, the courts played an ever-increasing role in reviewing local improvement district improvements established by municipalities. This was accomplished by the use of detailed de novo court review of the evidence relating to the question of whether or not a particular property received a benefit commensurate with the size of the assessment.[4] *In re Schmitz*, 44 Wn.2d 429, 268 P.2d 436 (1954). *See* Trautman, *Assessments in Washington*, 40 Wash. L. Rev. 100, 128 (1965).

The detailed de novo review approach was understandable since prior to 1957 the statute authorizing review of

---

[3]For an excellent discussion of this subject see an analysis by Professor Philip A. Trautman, *Assessments in Washington*, 40 Wash. L. Rev. 100 (1965).

[4]It seems clear under the statutes and case law that the questions to be reviewed by the court on appeal from an LID assessment are three: (1) Were the statutory procedures followed in the formation of the LID? (2) Did the property of those challenging the assessment receive benefits as nearly as practical commensurate with the amount of the assessment? (3) Was the property of those challenging the assessments assessed its proportionate share in relation to other parcels throughout the improvement district? *Sterling Realty Co. v. Bellevue*, 68 Wn.2d 760, 415 P.2d 627 (1966).

LID's by the courts provided in RCW 35.44.250: "The judgment of the court shall confirm, correct, modify or annul the assessment in so far as the same affects the property of the appellant."

This broad statutory review authority was significantly restricted in 1957 by the amendment of RCW 35.44.250 to provide:

> The judgment of the court shall confirm, unless the court shall find from the evidence that such assessment is founded upon a fundamentally wrong basis and/or the decision of the council or other legislative body thereon was arbitrary or capricious; in which event the judgment of the court shall correct, change, modify, or annul the assessment insofar as it affects the property of the appellant.

This amendment has not been authoritatively construed since its adoption. However, it has been suggested that the amendment was intended to "take the sting" out of *In re Schmitz, supra.* Gay, *Local Government Law, Washington Legislation—1957*, 32 Wash. L. Rev. 196 (1957). We agree that the amendment was intended to restrict judicial review. Determining the extent of the restriction, however, is more complex. It requires a consideration of the meaning of fundamentally wrong basis and/or arbitrary or capricious as those terms relate to the statutory assessment procedures.

The most troublesome problem is occasioned by the fact that the LID statutes do not specifically eliminate the concept of de novo judicial review and that standard of review is in direct conflict with the arbitrary or capricious standard, as that term is traditionally understood.[5] Generally, judicial review of administrative or legislative action will be restricted to the precise record before the agency whose

---

[5]Arbitrary or capricious action has come to mean willful and unreasoning action, without consideration of facts or circumstances. "Where there is room for two opinions, action is not arbitrary or capricious when exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion has been reached." *Lillions v. Gibbs*, 47 Wn.2d 629, 633, 289 P.2d 203 (1955); *Sharninghouse v. Bellingham*, 4 Wn. App. 198, 480 P.2d 233 (1971).

action is challenged. The court's role is to measure the action of the agency and determine whether it is arbitrary or capricious as defined by the courts. (See footnote 5.) But where judicial review is de novo, and the court hears and considers new evidence which was not before the agency, the court necessarily substitutes its judgment for that of the agency. *See Gerla v. Tacoma,* 12 Wn. App. 883, 533 P.2d 416 (1975).

The problem is further compounded by the fact that in determining the necessity for street or sewer improvements, the municipality is performing primarily a legislative function. The judiciary should be hesitant to interfere with that function unless a clear showing is made that the action is unlawful, oppressive, or the assessment is substantially excessive or disproportionate. 14 E. McQuillin, *The Law of Municipal Corporations* § 38.240, at 576 *et seq.* (3d ed. 1970). Again de novo review with a simple preponderance of the evidence test conflicts with these principles. *See Household Fin. Corp. v. State,* 40 Wn.2d 451, 244 P.2d 260 (1952).

Yet the LID statutes do not require a verbatim record of the proceedings before the municipality. RCW 35.44.230. Nor is there any specific statutory restriction on the type of evidence which the court may consider in reviewing the legislative action—other than the restriction which might follow implicitly from the use of the term fundamentally wrong basis and/or arbitrary or capricious.

This conflict, of course, can best be resolved by further legislative clarification. However, we must make some attempt to resolve it by judicial interpretation, realizing that neither fundamentally wrong basis nor arbitrary or capricious has been defined by the statutes.

In our interpretations we must be mindful of the admonition quoted above that the statutes must be liberally construed so as to carry out the objectives for which they were intended. As well, we must be mindful that the 1957 amendment discussed above was unquestionably a reaction

to too much judicial interference with the legislative function.

With these caveats in mind, we consider the legislative purpose of these statutes as they pertain to judicial review. The underlying theory of special assessments is that (1) the property upon which they are imposed must be peculiarly benefited so that the owners do not, in fact, pay substantially more than they receive by reason of the improvement, and (2) the property must not be assessed proportionately more than its share in relation to other parcels throughout the district. *Sterling Realty Co. v. Bellevue*, 68 Wn.2d 760, 415 P.2d 627 (1966). It is with these two propositions that judicial review is primarily concerned and to which the arbitrary or capricious standard of review is applicable. It is within the context of these concepts that we must determine the extent of de novo review which has survived the 1957 amendment.

Before proceeding with that question, however, it is necessary that we consider the purpose of the phrase "fundamentally wrong basis," since plaintiff contends that an excessive assessment as to his property ipso facto establishes the assessment to be founded on a fundamentally wrong basis. In our opinion that view of the term is far too broad. We think the fundamentally wrong basis (RCW 35.44.250) refers to some error in the method of assessment or in the procedures used by the municipality, the nature of which is so fundamental as to necessitate a nullification of the entire LID, as opposed to a modification of the assessment as to particular property. *See Sterling Realty Co. v. Bellevue, supra.* Examples of this type of error are, we think, contained in the reassessment procedures set forth in RCW 35.44.280.[6] Fundamental errors should be ascertained as a matter of law by reference to the transcript which plaintiff is required to certify. RCW 35.44.230. That record

---

[6] RCW 35.44.280 authorizes reassessments where the "assessments are not valid in whole or in part for want of form, or insufficiency, informality, irregularity, or nonconformance with the provisions of law, charter, or ordinance . . ."

should demonstrate, without reference to extrinsic evidence, whether the statutes and ordinances or charters have been followed by the municipality. In the case at bar, the record certified to the trial court shows no errors of this nature and the court was warranted in determining the issue in favor of the City as a matter of law.

With reference to the conflict between detailed judicial de novo review on the one hand, and the arbitrary and capricious standard on the other, there is room for some compromise. The issue of whether or not the assessment is excessive as to any given objector is in the nature of a judicial question under the before and after market value test, as mandated by *In re Local Improvement 6097*, 52 Wn.2d 330, 324 P.2d 1078 (1958). Expert evidence is clearly required to establish whether or not property is especially benefited by an improvement and the extent of the benefit. Expert testimony also may be required to establish a disproportionate assessment. To permit expert evidence to go before the court, however, when such testimony has not been presented to the municipality, is to deny the trial court any reasonable basis for applying the arbitrary or capricious standard of review. The answer to this dilemma is, we think, to require plaintiff as a part of his burden of proof, to show that he offered before and after market value testimony to the municipality in support of his objections. This can be done (1) by the minutes of the hearing before the municipality if detailed minutes are kept; (2) by a verbatim transcript if one was made; or (3) by oral testimony confirming that such testimony was presented at the hearing before the municipality. When this foundation has been laid, plaintiff should be permitted to offer similar testimony on a de novo basis. Since a presumption of the validity of the City's action will prevail throughout the trial, the City may either elect to stand on the transcript or present additional evidence de novo in rebuttal to plaintiff's evidence. The trial court should then make a reasoned determination of whether the evidence so preponderates against the decision of the municipality as to

unmistakably point to the fact that it was arbitrary or capricious as heretofore defined. *See* 14 E. McQuillin, *The Law of Municipal Corporations* § 38.240, at 576 (3d ed. 1970).

In the case at bar there is no indication that plaintiff presented any of the requisite evidence to the city council in support of his contention that the assessment was excessive. Consequently, he failed in an essential element of his burden of proof and the action was properly dismissed.

Judgment of dismissal affirmed.

PETRIE, C.J., and REED, J., concur.