# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| ENID and EDWARD DUNCAN; ERIC DOCKEN, DOCKEN PROPERTIES, LP; JAMES and PATRICIA SCHMIDT; DARLENE MASTERS; SUELO MARINA, LLC; AKA THE BRICKHOUSE, LLC; 1999 STOKES FAMILY LLC; TINA REMPEL; ELDEAN REMPEL, as Trustee for REVOCABLE TRUST AGREEMENT OF RAY AND ELDEAN B. REMPEL Dated December 12, 2006, | No.  48028-0-II |
| Appellants, | |
| v. | |
| CITY OF EDGEWOOD, Local Improvement District No. 1, | UNPUBLISHED OPINION |
| Respondent. | |

WORSWICK, J. — This is the second appeal of the City of Edgewood's local improvement district (LID) assessments for installation of a sewer system.  In *Hasit, LLC v. City of Edgewood*, 179 Wn. App. 917, 320 P.3d 163 (2014), we annulled Edgewood's LID assessments against the appealing property owners.  Following our decision in *Hasit*, the City reassessed the affected properties and the Edgewood City Council held a hearing to address the property owners' objections to their reassessments.  The Council ultimately rejected the property owners' objections and adopted an ordinance confirming the reassessment roll.  Several property owners[1]

---

[1] The appealing property owners include 1999 Stokes Family LLC ("Stokes"); Eldean Rempel, as Trustee for Revocable Trust Agreement of Ray E. Rempel and Eldean B. Rempel dated

No. 48028-0-II

appealed to the superior court, which affirmed the Council's reassessment decision. The

property owners now appeal the superior court's order affirming the reassessment decision.

Property owners Stokes and Rempel assert that the reassessment roll must be annulled or

modified[2] because the Council's decision to confirm the reassessment roll was arbitrary and

capricious. Specifically, Stokes and Rempel contend that the Council's decision was arbitrary

and capricious because the Council incorrectly (1) applied presumptions in favor of the City's

proposed reassessments, (2) imposed a burden on the property owners to prove the reassessments

were invalid, and (3) confirmed reassessments that were in substantial excess of the special

---

December 12, 2006, a trust, and Tina Rempel ("Rempel"); Enid and Edward Duncan ("Duncan"); Darlene Masters and James and Patricia Schmidt ("Masters/Schmidt"); AKA the Brickhouse LLC ("Brickhouse"); Suelo Marina LLC; and Eric Docken and Docken Properties LP ("Docken").

[2] It is not clear whether there is statutory authority for this court to modify a LID assessment decision. RCW 35.44.250 provides:

> **Procedure on appeal—Hearing by superior court.** . . . The judgment of the court shall confirm, unless the court shall find from the evidence that such assessment is founded upon a fundamentally wrong basis and/or the decision of the council or other legislative body thereon was arbitrary or capricious; in which event the judgment of the court shall correct, change, modify, or annul the assessment insofar as it affects the property of the appellant.

By its terms, this statute applies to appeals heard by the superior court. In contrast, RCW 35.44.260 is silent about the remedies available on appeal from the superior court's judgment, stating only:

> **Procedure on appeal—Appellate review.**
> Appellate review of the judgment of the superior court may be obtained as in other cases if sought within fifteen days after the date of the entry of the judgment in the superior court.

Because we conclude that the appellants are not entitled to any relief from the judgment of the superior court, we do not reach this issue.

benefit to the properties and grossly disproportionate to similarly situated properties within the LID.

Property owners Duncan, Masters/Schmidt, Brickhouse, Suelo Marina, and Docken[3] also request that the reassessment roll be annulled or modified. They contend that (1) the Council's decision to confirm the reassessment roll was arbitrary and capricious or founded on a fundamentally wrong basis,[4] (2) the reassessments deprived them of due process because they did not receive any special benefits from the LID, (3) the City's failure to present any rebuttal evidence following their presentations at the reassessment hearing rendered the Council's decision to confirm the reassessment roll invalid, (4) the Council improperly considered property owners' statements from a previous 2011 hearing, and (5) the city manager's attendance in the LID executive session violated the appearance of fairness doctrine.

We affirm.

## FACTS

### I. FIRST ASSESSMENT ROLL AND APPEAL

In 2008, the Council created LID No. 1 to finance the construction of a sewer system, imposing the entire project cost on the owners of 161 parcels in the LID. The sewer system was

---

[3] Duncan, Masters/Schmidt, Brickhouse, Suelo Marina, and Docken are represented by the same counsel and raise several shared arguments in addition to their individual property-specific claims. Hereafter, this opinion will refer to these property owners collectively as the "Docken Petitioners."

[4] The Docken Petitioners raise various arguments, specific to the reassessments against their individual properties, in support of their contention that the Council's reassessment decision was arbitrary or capricious or founded on a fundamentally wrong basis. These various arguments are addressed in the body of this opinion.

completed in 2011 with an estimated cost of $21,238,268. To estimate the "special benefit"[5]

attributable to each of the properties within the LID as a result of the sewer system, the City

hired professional appraisal firm Macaulay and Associates Ltd. Administrative Record (AR) at

362. After Macaulay submitted its proposed assessments, the City notified affected property

owners of their right to object to the assessments at a hearing before a hearing examiner.

Following the hearing, the hearing examiner recommended rejecting all of the property owners'

protests, apart from reducing assessments to three properties. The Council thereafter considered

the hearing examiner's recommendations and heard objections from protesting parties. After

hearing the protesting property owners' objections, the Council voted to approve an ordinance

that, apart from reducing assessments on two properties, confirmed the assessment roll as

recommended by the hearing examiner.

Nine affected property owners appealed the Council's assessment decision to the superior

court.[6] *Hasit*, 179 Wn. App. at 932. The superior court concluded that the City's notice of the

hearing examiner's proceedings was defective, and it remanded for a de novo hearing. *Hasit*,

179 Wn. App. at 932. The City appealed the superior court's decision to this court and the

Docken Petitioners cross-appealed. *Hasit*, 179 Wn. App. at 932.

---

[5] A "special benefit" is the "increase in fair market value attributable to the local improvements." *Doolittle v. City of Everett*, 114 Wn.2d 88, 103, 786 P.2d 253 (1990).

[6] One of the nine appealing property owners, Hasit LLC, agreed in a stipulated motion to a voluntary dismissal of its appeal. *See Hasit*, 179 Wn. App. at 932 n. 5. Additionally, property owners George and Arlyn Skarich do not participate in this current appeal from the 2014 reassessments.

On appeal, we annulled the LID assessments as to the appealing property owners. *Hasit*, 179 Wn. App. at 960. In annulling the LID assessments, we first held that the City calculated the assessments on a fundamentally wrong basis by including costs for an oversized sewer system because the oversized sewer system benefitted only future users not assessed under the LID. *Hasit*, 179 Wn. App. at 938-41, 960. We further held that the Council's confirmation of the proposed assessment roll was arbitrary and capricious because it (1) based its confirmation in part on the objecting property owners' failure to present evidence that the City's flawed notice prohibited the property owners from presenting, (2) improperly required objecting property owners to submit expert appraisal evidence to challenge the assessments, and (3) improperly imposed a burden on property owners to prove that the assessments were founded on a fundamentally wrong basis or were arbitrarily or capriciously imposed. *Hasit*, 179 Wn. App. at 944-50. We also held that the City violated the property owner's due process rights by failing to notify the property owners sufficiently in advance of the hearing to allow the property owners to obtain the evidence required to challenge the assessments.[7] *Hasit*, 179 Wn. App. at 952-58.

In annulling the assessments as to the appealing property owners, we rejected some of the property owners' claims. Relevant to this current appeal, we rejected the property owners' claims that the assessments rested on a fundamentally wrong basis due to the Macaulay

---

[7] Although we held that the City's flawed notice violated the appealing property owners' due process rights, we declined to address whether the flawed notice amounted to a jurisdictional defect rendering the proceedings invalid as to all the property owners assessed under the LID. *Hasit*, 179 Wn. App. at 952, 958-59. In declining to address the jurisdictional defect claim, we noted that nonappealing property owners had waived any due process challenge by failing to object to their notices. *Hasit*, 179 Wn. App. at 952, 958-59.

appraiser's decision to utilize a mass-appraisal method rather than a zone-and-termini method. *Hasit*, 179 Wn. App. at 943-44.

## II. 2014 REASSESSMENT

After we issued our opinion in *Hasit*, the City reassessed the subject properties. The City commissioned a study to determine the costs of the sewer project attributable to oversizing the sewer capacity. The study determined that the oversizing costs totaled $805,687.

The City also recommissioned Macaulay to supplement its prior appraisals by conducting individual evaluations of the remaining subject properties. To assist in the reassessments of the subject properties, Macaulay's appraiser, Robert Macaulay, met with property owners and discussed the owners' concerns while inspecting their properties.[8] Macaulay made adjustments to some of his prior assessments based on his discussions with property owners and inspections of their properties. After accounting for the elimination of oversizing costs, Macaulay determined that the total estimated special benefit yielded a cost/benefit ratio[9] of 70.9 percent.

---

[8] Regarding property owner Suelo Marina, Macaulay's supplemental appraisal report states:

> A letter was sent to the property owner on April 25, 2014 offering them the opportunity to accompany the appraiser on a property inspection. I did talk to the property owner on my April 15, 2014 inspection, prior to sending the letter. I was taking photographs of the property from the adjacent sidewalk and he came out and asked me what I was doing. I explained that additional appraisal work was being done on the LID. He indicated that they (the owners) were through with challenging their assessment due to the appellate court ruling.

AR at 3173-74. Regarding property owner Docken, Macaulay's supplemental report states that the appraiser discussed Docken's concerns by telephone.

[9] Macaulay determined the cost/benefit ratio by "[d]ividing the total revised project cost by the total estimated special benefit." AR at 3098. The appellant property owners do not challenge Macaulay's cost/benefit ratio calculation.

Macaulay applied this revised cost/benefit ratio to each of the individual property assessments and, thus, reduced its estimated special benefit as to each property by 29.1 percent to reach his recommended final reassessment.[10]

Applying a retrospective valuation date of May 10, 2011, Macaulay recommended the following final reassessments:

| Owner | Value without LID | Value with LID | Special Benefit | Updated Cost/Benefit | 2014 Final Reassessment |
|---|---|---|---|---|---|
| Stokes | $755,000 | $1,290,000 | $535,000 | 0.709 | $379,315 |
| Rempel | $1,400,000 | $2,515,000 | $1,115,000 | 0.709 | $790,535 |
| Duncan | $925,000 | $1,225,000 | $300,000 | 0.709 | $212,700 |
| Masters/Schmidt | $815,000 | $1,420,000 | $605,000 | 0.709 | $428,945 |
| Brickhouse | $505,000 | $535,000 | $30,000 | 0.709 | $21,270 |
| Suelo Marina | $680,000 | $1,135,000 | $455,000 | 0.709 | $322,595 |
| Docken | $1,800,000 | 2,085,000 | $285,000 | 0.709 | $202,065 |

AR at 3099.[11]

---

[10] The appellant property owners do not challenge the Council's adoption of the estimated oversize costs.

[11] The property owners were originally assessed as follows:

| Owner | 2011 Final Assessment | 2014 Final Reassessment |
|---|---|---|
| Stokes | $529,151 | $379,315 |
| Rempel | $877,005 | $790,535 |
| Duncan | $325,008 | $212,700 |
| Masters/Schmidt | $445,872 | $428,945 |
| Brickhouse | $34,638 | $21,270 |
| Suelo Marina | $333,852 | $322,595 |
| Docken | $257,206 | $202,065 |

AR at 219-33.

The City notified property owners that it would conduct a hearing on the final reassessment roll on September 17, 2014, and that property owners objecting to the proposed reassessment must file written objections at or before the hearing.[12] Each of the affected property owners filed written objections.

### III. OBJECTIONS

The property owners filed the following written objections to Macaulay's proposed reassessments.

A.    *Stokes*

Stokes asserted that Macaulay's proposed reassessment (1) understated the property's before-LID value, (2) overstated the property's after-LID value by failing to consider extraordinary costs associated with developing the property, and (3) disproportionately estimated the property's special benefit as compared to a similarly situated property within the LID. In support of these assertions, Stokes presented an appraisal from Hunnicutt & Associates Inc. that concluded the assessment to the Stokes property should be $118,542. Stokes also presented a declaration from James Schweickert, a civil engineer with Larson & Associates Land Surveyors and Engineers Inc. Schweickert's declaration stated that he was retained by Stokes in 2012 to assist in commercial development plans for the property.

Larson & Associates completed a "Conceptual Site Plan" for the Stokes property that concluded storm water improvements would need to be made to develop the property. The Conceptual Site Plan estimated the costs of developing the necessary storm water improvements

---

[12] The appealing property owners do not challenge the City's notice procedure.

would total $340,000 and would cause the loss of 35,000 square feet of otherwise developable property. The Conceptual Site Plan cost estimates did not include costs for acquiring easements through neighboring properties, which easements would be required to implement the storm water improvements.

B. *Rempel*

Rempel asserted that Macaulay's proposed reassessment (1) understated the property's before-LID value, (2) failed to provide any explanation for the low valuation of the portion of the property not fronting Meridian Avenue, and (3) overstated the property's after-LID value. In support of these assertions, Rempel presented an appraisal from Hunnicutt that concluded the assessment to the Rempel property should be $381,925.

C. *Duncan*

Duncan asserted that Macaulay's proposed reassessment (1) determined that the existing use of the property both before and after the LID is the highest and best use of the property and, thus, the property receives no special benefit from the LID; (2) overstated the usable portion of the property when compared to the City's own critical areas map; and (3) failed to deduct from its assessment the area of the property needed to support development.

D. *Masters/Schmidt*

Masters/Schmidt asserted that Macaulay's proposed reassessment (1) fell outside Macaulay's own "[t]est of reasonableness" range of $1.00 to $2.75 per square foot, (2) failed to reduce the special benefit of the LID by the cost of installing sewer lines, and (3) impermissibly distributed full sewer costs to property owners within the LID without calculating the parcel-specific special benefits. AR at 801.

E.      *Brickhouse*

Brickhouse asserted that Macaulay's proposed reassessment (1) determined that the existing use of the property both before and after the LID is the highest and best use of the property and, thus, the property receives no special benefit from the LID, and (2) failed to reduce the special benefit of the LID by the cost of installing sewer lines.

F.      *Suelo Marina*

Suelo Marina asserted that Macaulay's proposed reassessment (1) fell outside Macaulay's own "test of reasonableness" range of $1.00 to $2.75 per square foot, (2) determined that the existing use of the property both before and after the LID is the highest and best use of the property and, thus, the property receives no special benefit from the LID, (3) presumed an artificially low before-LID value by placing no value on the existing buildings on the property, and (4) improperly double-counted the special benefit to the property.

G.      *Docken*

Docken owns three parcels of land within the LID. As to parcel 131, Docken asserted that Macaulay's proposed reassessment (1) determined that the existing use of the property both before and after the LID is the highest and best use of the property and, thus, the property receives no special benefit from the LID; (2) failed to discount the assessment for unusable land; (3) improperly speculated that future market demands would create a need for more single family housing units; and (4) failed to present evidence of poor soil conditions on the property. As to parcels 133 and 140, Docken asserted that Macaulay's proposed reassessment (1) undervalued the properties' before-LID value, (2) improperly double-counted the special benefit to the

10

properties, and (3) improperly considered the potential integrated use of the properties when calculating the special benefit.

## IV. HEARING ON PROPERTY OWNERS' OBJECTIONS

On September 17, 2014, the Council held a hearing to address the property owners' objections. At the hearing, Macaulay briefly testified about his proposed reassessments as to each of the individual properties.

Regarding the Stokes property, Macaulay testified that after "visually walking the site it was apparent that the wetlands encroached the property and restricted use of the property more than I anticipated in my previous analysis. So recognizing that, I lowered the special benefit to reflect the lowered utility of the site versus my previous analysis." AR at 641.

Regarding the Rempel property, Macaulay testified that his reassessment increased the before-LID value of the property based on an existing ministorage building on the property. Macaulay stated that the increase in pre-LID value resulted in a special benefit of $3.55 per square foot, a reduction from the $3.75 per square foot special benefit calculated in Macaulay's original assessment.

Regarding the Duncan property, Macaulay testified that his reassessment calculated the usable area of the property at 4.62 acres. Macaulay stated that he had reduced the usable area from the 6.75 acres calculated in his original assessment based on his on-site inspection of the property.

Regarding the Masters/Schmidt properties, Macaulay testified that Schmidt discussed concerns about potential wetlands on the property for which no critical areas study had been

made. Macaulay stated that the area of potential wetlands was too small to have any measurable impact on development and, thus, it did not affect his reassessment.

Regarding the Brickhouse property, Macaulay testified that after inspecting the property and discussing the property owner's concerns, he determined that the risk of septic system failure was substantially less than he had predicted in his original assessment. Macaulay stated that based on this decreased risk, his reassessment recommended a $30,000 special benefit as a result of the LID, a reduction from his original recommendation of a $47,000 special benefit.

Regarding the Suelo Marina properties, Macaulay testified that his reassessment differed slightly from the original assessment due to downsizing cost, but otherwise there were no notable changes.

Regarding the Docken properties, Macaulay testified that he could not inspect the properties but that he discussed the owner's concerns by telephone. Macaulay stated that, based on the discussion, the reassessment lowered the special benefit as to parcel 131 but not to parcels 133 and 140.

Macaulay concluded his testimony by stating that a number of properties within the LID had been sold with buyers assuming the LID assessments. According to Macaulay these sales, together with pending sales, demonstrate that "these assessments and benefit estimates are reasonable, and that they reflect the intensity of use change in the market resulting from the LID sewer project." AR at 646. Macaulay later expanded on this testimony during his rebuttal testimony, describing specific sales or pending sales of properties within the LID and the buyers' willingness to assume the prior LID assessment values on those properties.

12

After Macaulay testified, the Council admitted into the record the property owners' written objections and heard testimony from the property owners and their witnesses. Macaulay responded to questions posed to him during the property owners' testimony. The Council then heard rebuttal testimony from Macaulay and Eric Phillips, the assistant city manager for Edgewood.

After concluding the hearing, the Council went into executive session for approximately 30 minutes before closing the special council meeting. The Council stated that, due to the volume of the submitted materials, it would continue deliberations on September 24. After again deliberating the reassessment roll during an executive session on September 24, the Council passed a motion to adopt the recommended reassessment roll and directing City staff to prepare an ordinance recording the same to be presented at a subsequent council meeting.

At the subsequent October 2, 2014 special council meeting, the Council adopted findings of fact and conclusions of law. The Council also adopted Ordinance 14-0424, which confirmed the reassessment roll.

Some of the affected property owners appealed the Council's reassessment decision to the superior court. On August 28, 2015, the superior court entered an order dismissing the property owners' appeals and affirming the Council's reassessment decision. The property owners appeal from the superior court order.

ANALYSIS

I. STANDARD OF REVIEW

RCW 35.43.040 provides municipalities with authority to order the construction of local improvements, including sewer systems, and to "levy and collect special assessments on property

specially benefited thereby to pay the whole or any part of the expense thereof." A "special benefit" is "the increase in fair market value attributable to the local improvements." *Doolittle v. City of Everett*, 114 Wn.2d 88, 103, 786 P.2d 253 (1990). A property's special benefit "must be actual, physical and material and not merely speculative or conjectural." *Heavens v. King County Rural Library Dist.*, 66 Wn.2d 558, 563, 404 P.2d 453 (1965).

An assessment against a property may not substantially exceed the special benefit to the property attributable to the LID. *Hasit*, 179 Wn. App. at 933. And a property "should not bear 'proportionally more than its share' of the total assessment relative to other parcels in the LID." *Hasit*, 179 Wn. App. at 933 (quoting *Cammack v. Port Angeles*, 15 Wn. App. 188, 196, 548 P.2d 571 (1976)). But this proportionality requirement does not mandate that all properties "be assessed the same percentage of the special benefits received." *Hasit*, 179 Wn. App. at 933.

Parties may appeal a council's final assessment decision to the superior court. RCW 35.44.200. The superior court shall confirm the assessment decision, unless it finds "that such assessment is founded upon a fundamentally wrong basis and/or the decision of the council . . . was arbitrary or capricious." RCW 35.44.250. "Arbitrary and capricious" refers to "willful and unreasoning action, taken without regard to or consideration of the facts and circumstances surrounding the action." *Abbenhaus v. City of Yakima*, 89 Wn.2d 855, 858, 576 P.2d 888 (1978). And, "[w]here there is room for two opinions, an action taken after due consideration is not arbitrary and capricious even though a reviewing court may believe it to be erroneous." *Abbenhaus*, 89 Wn. App. at 858-59. An assessment is founded on a "fundamentally wrong basis" if there exists "'some error in the method of assessment or in the procedures used by the municipality, the nature of which is so fundamental as to necessitate a nullification of the entire

LID, as opposed to a modification of the assessment as to particular property.'" *Abbenhaus*, 89 Wn. App. at 859 (quoting *Cammack*, 15 Wn. App. at 196). A superior court's judgment from an appeal of a final assessment decision may be appealed to this court. RCW 35.44.260.

When reviewing a superior court's determination under RCW 35.44.250, our review is not an "independent consideration of the merits of the issue but rather a consideration and evaluation of the decision-making process." *Abbenhaus*, 89 Wn.2d at 859-60. "Review is limited to the record of proceedings before the City Council." *Bellevue Assoc. v. City of Bellevue*, 108 Wn.2d 671, 674, 741 P.2d 993 (1987). We presume that the Council's assessment decision was proper, and the party challenging the assessment bears the burden of overcoming this presumption. *Bellevue Assoc.*, 108 Wn.2d at 674. We also presume "'that an improvement is a benefit; that an assessment is no greater than the benefit; that an assessment is equal or ratable to an assessment upon other property similarly situated; and that the assessment is fair.'" *Abbenhaus*, 89 Wn.2d at 861 (quoting Philip A. Trautman, *Assessments in Washington*, 40 WASH. L. REV. 100, 118 (1965)).

## II. LAW OF THE CASE DOCTRINE

As an initial matter, the City contends that several of the appellants' arguments on appeal are foreclosed by the law of the case doctrine. We agree in part and disagree in part.

As applicable here, "the law of the case doctrine stands for the proposition that once there is an appellate holding enunciating a principle of law, that holding will be followed in subsequent stages of the same litigation." *Roberson v. Perez*, 156 Wn.2d 33, 41, 123 P.3d 844 (2005). The City argues that because *Hasit* approved of Macaulay's use of a mass appraisal method over a zone and termini method, and because Macaulay again utilized this method in his

2014 reassessment analysis, the appealing property owners cannot argue on appeal that the Council's reassessment decision was arbitrary or capricious or founded on a fundamentally wrong basis. The City reads our holding in *Hasit* too broadly.

Although *Hasit* approved of Macaulay's use of a mass appraisal method, we annulled the LID assessment as to the appealing property owners because, among other reasons, (1) the City's assessment decision was arbitrary and capricious because the decision was based on the property owners' failure to present evidence that the City's flawed notice prevented the property owners from presenting, (2) the City improperly required the property owners to prove the assessments were based on a fundamentally wrong basis or were imposed arbitrarily or capriciously, and (3) the City failed to provide property owners with constitutionally adequate notice of the assessment hearing. 179 Wn. App. at 944-45, 948-49, 954-58. Our decision in *Hasit* does not prohibit the property owners from arguing in this appeal that the Council's assessment decision was arbitrary or capricious or founded on a fundamentally wrong basis based on the evidence they presented at the reassessment hearing.

Our decision in *Hasit* prevents property owners only from again arguing that Macaulay's use of the mass appraisal method, alone, shows the Council reassessment decision was arbitrary and capricious or founded on a fundamentally wrong basis. Contrary to the City's position, our decision did not immunize the Council's decision to reject the property owners' objections at a reassessment hearing from any scrutiny on appeal. If we were to accept the City's proposed application of the law of the case doctrine, the reassessment proceedings would be little more than an exercise in futility, and our decision to annul the prior assessments would provide no effective relief to the property owners. Accordingly, we reject the City's broad application of the

law of the case doctrine and hold that the doctrine prevents property owners only from again arguing that Macaulay's use of the mass appraisal method, alone, requires annulment of the Council's reassessment decision.

## III. COUNCIL'S REASSESSMENT DECISION NOT ARBITRARY OR CAPRICIOUS OR FOUNDED ON FUNDAMENTALLY WRONG BASIS

All of the appealing property owners contend that the Council's decision confirming the reassessment roll was arbitrary and capricious. We disagree.

### A. *Stokes and Rempel*

#### 1. *Contentions with Findings of Fact*

Stokes and Rempel contend that (1) several of the Council's findings are not supported by substantial evidence in the record and (2) the findings are inadequate to show the bases of the Council's decision to confirm the reassessment roll.

Stokes and Rempel assign error to the Council's findings of fact 5-7, 11-14, and 16, arguing that the record fails to provide substantial evidence in support of the findings. But Stokes and Rempel fail to provide any argument with regard to these challenged findings, and it is unclear how these findings relate to their arguments on appeal. Accordingly, we do not address the challenged findings of fact. *See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (failure to present argument regarding a challenged finding of fact waives assignment of error as to that finding).

Next, Stokes and Rempel contend that the Council's findings are inadequate to show how the Council resolved factual disputes. It is unclear whether Stokes and Rempel are asserting that such alleged inadequacy of the findings are independent grounds for reversing the Council's reassessment decision. And Stokes and Rempel do not identify any requirement within the LID

17

statutes that a council submit findings of fact and conclusions of law that address every objection lodged by property owners. *See* Chapter 35.44 RCW.

To the extent that a council's findings of fact reveal an infirmity in the decision-making process, such as arbitrary or capricious action, a fundamentally wrong basis in support of assessments, or a due process violation stemming from inadequate notice, such findings may be relevant to our appellate review. However, absent such an infirmity, a council's factual findings, even if we believe them to be erroneous, cannot support a basis for this court to annul or modify the final assessment decision. *Abbenhaus*, 89 Wn.2d at 858-59. No such infirmity is present here. The Council's factual findings reveal only that it considered the Macaulay reassessment appraisals and other submitted evidence, including the property owners' written objections, hearing testimony, and expert appraisal evidence, and weighed the evidence in favor of Macaulay's proposed reassessments. Accordingly, the Council's written factual findings do not show any deficiency in the Council's decision-making process requiring annulment of the reassessments.

2. *Presumptions and Burdens*

Next, Stokes and Rempel contend that the Council's conclusion of law 3 shows that it engaged in arbitrary and capricious action by improperly applying presumptions in favor of Macaulay's proposed reassessments and imposing a burden on property owners to overcome that presumption. We disagree.

Conclusion of law 3 states:

The Board concludes that the reassessments based on the Macaulay Study were determined in accordance with the Court of Appeals' standards as set forth in Hasit. The Reassessments reflect properly the Special Benefits resulting from LID #1 improvements. Differing opinions were expressed regarding the Special Benefit to

18

the Appellant Properties; however, the Board concludes that *the evidence presented by the owners of the Appellant Properties did not overcome the City Staff/LID recommendations.* Given that, the objections of the owners of the Appellant Properties are overruled.

AR at 14-15 (emphasis added). Stokes and Rempel argue the Council's conclusion that the property owners' evidence "did not overcome the City Staff/LID recommendations" show that the Council applied improper presumptions and evidentiary burdens. Br. of Appellants (Stokes) at 27 (emphasis omitted). Our Supreme Court has stated the presumptions and burdens of proof applicable to assessment decisions as follows:

(1) the burden is upon the one challenging the assessment to prove its incorrectness as it is presumed the City has acted properly and legally; (2) the assessment is presumed to be a benefit; (3) the assessment is presumed to be no greater than the benefit; (4) it is presumed that an assessment is equal or ratable to an assessment upon other property similarly situated and that the assessment is fair; and (5) evidence of appraisal values and benefits is necessary to rebut these presumptions. Appellate review of such cases does not permit an independent evaluation of the merits.

*City of Seattle v. Rogers Clothing for Men, Inc.*, 114 Wn.2d 213, 229-30, 787 P.2d 39 (1990). If an objecting property owner produces competent evidence of contrary appraisal values and special benefits resulting from a LID, the presumptions in favor of the City's assessments disappear and the burden shifts to the City to prove its assessments are valid. *Rogers*, 114 at 231; *see also Bellevue Plaza, Inc. v. City of Bellevue*, 121 Wn.2d 397, 403, 851 P.2d 662 (1993).

Here, Stokes and Rempel produced expert appraisal evidence that was contrary to the City's proposed assessments. Accordingly, the City could not rely on the presumptions set forth in *Rogers* to support its proposed reassessments. Instead, the City was required to produce evidence to support its assessments. It did so in the form of Macaulay's reassessment studies, which the Council admitted into the administrative record. The Council's conclusion of law 3

19

does not state that property owners' objections were rejected because their evidence did not overcome presumptions in favor of the City. Rather, it stated that the property owners' evidence did not overcome the city staff/LID recommendations, which recommendations were based on the evidence presented in Macaulay's reassessment reports.

In other words, conclusion of law 3 shows only that the Council weighed the competing appraisal evidence and concluded that the Macaulay reassessment evidence was more persuasive. And Stokes and Rempel cannot demonstrate arbitrary or capricious action based merely on the Council's weighing of evidence. *See Abbenhaus*, 89 Wn.2d at 858-59 ("Where there is room for two opinions, an action taken after due consideration is not arbitrary and capricious even though a reviewing court may believe it to be erroneous.").

3. *Special Benefit*

Before addressing whether Stokes or Rempel can meet their burdens of showing the Council acted arbitrarily or capriciously in adopting Macaulay's special benefit analysis, our standard of review of this issue merits additional discussion. Prior to a 1957 amendment to RCW 35.44.250, appellate courts engaged in a detailed de novo review of the evidence supporting a special benefit determination and could overturn an assessment decision based on its de novo review of the merits. *Abbenhaus*, 89 Wn.2d at 857-58; *see also Cammack*, 15 Wn. App. at 193-94.

The 1957 amendment, however, "limit[ed] court involvement in assessment proceedings." *Abbenhaus*, 89 Wn.2d at 859. Under the "'fundamentally wrong basis'" and "'arbitrary or capricious'" standards of review implemented through the 1957 amendment, we no longer make an "independent decision regarding the most desirable method of assessment."

*Abbenhaus*, 89 Wn.2d at 859. Instead, we review the record before the Council to determine "whether it adequately supports the action of the municipality." *Abbenhaus*, 89 Wn.2d at 859. And the appealing property owners bear the burden on appeal of overcoming the presumption that the Council's assessment decision was legal and proper. *Abbenhaus*, 89 Wn.2d at 860-61. Neither Stokes nor Rempel meet this burden.

    a. *Stokes*

    i. *Before-LID Valuation*

Stokes first contends that the Council acted arbitrarily and capriciously in confirming the reassessment roll because Macaulay's appraisal understated the before-LID value of the Stokes property. Macaulay employed a sales comparison approach in determining the estimated before-LID value of the Stokes property. This approach evaluated the sales prices of similarly situated properties without sanitary sewer service and adjusted the comparable value to account for any differences between the Stokes property and the similarly situated properties. For example, Macaulay valued the Stokes property at the low end of the value range of similarly situated properties because a significant area of the Stokes property is composed of fill material, making it difficult to receive approval from the Pierce County Health Department to install septic systems to service the property. Based on the sales comparison approach, Macaulay estimated the before-LID value of the Stokes property at $755,000.

Stokes does not identify any specific error with regard to Macaulay's sales comparison approach. Instead, Stokes contends that its appraiser's estimated before-LID valuation of $1,052,904 was more consistent with applicable comparable sales. In other words, Stokes requests that we annul or modify the Council's reassessment decision because its appraiser

employed a more "desirable method of assessment." *Abbenhaus*, 89 Wn.2d at 859. But, under

our applicable standard of review, this is an inadequate basis upon which to annul the Council's

assessment decision. *Abbenhaus*, 89 Wn.2d at 859. Because the Macaulay appraisal study

"adequately supports the action of the municipality," Stokes cannot show that the Council acted

arbitrarily or capriciously in accepting Macaulay's proposed before-LID valuation of the Stokes

property.[13] *Abbenhaus*, 89 Wn.2d at 859.

      ii. *After-LID Valuation*

Next, Stokes contends that the Council acted arbitrarily and capriciously in confirming

the reassessment roll because Macaulay's appraisal overstated the after-LID value of the Stokes

property. Stokes argues that Macaulay's appraisal of its property's estimated after-LID value of

$1,290,000 failed to account for extraordinary development costs required to realize the special

benefit of the LID. In contrast with Macaulay's appraisal, the Stokes appraiser calculated the

after-LID value of the Stokes property to be $1,220,100. Notably, the Stokes appraiser

calculated the after-LID value of the Stokes property to be $1,966,800 but discounted the special

benefit resulting from the LID by $340,000 to account for the costs of developing a storm water

management retention system and again reduced the special benefit by 25 percent ($406,700) for

the risks and costs of obtaining easements and for unspecified developmental difficulties.

At the outset we reject Stokes contention that Macaulay was required to discount its

estimated special benefit by 25 percent to account for "heightened risks and unknown costs

associated with development of the Stokes Property." Br. of Appellants (Stokes) at 42.

---

[13] Both Macaulay and the competing appraiser purported to comply with the Uniform Standards of Professional Appraisal Practice and with the Code of Professional Ethics of the Appraisal Institute.

Unspecified heightened risks and unknown costs are not appropriate factors to consider when determining the after-LID market value of a property because these factors are speculative at best. *See Bellevue Plaza*, 121 Wn.2d at 411 ("[W]hen an appraiser uses a factor 'beyond the knowledge of reasonable certainty', it becomes pure speculation.") (quoting *In re Seattle Local Improvement No. 6097*, 52 Wn.2d 330, 335-36, 324 P.2d 1078 (1958)).

We also reject the contention that Macaulay was required to discount the estimated special benefit to the Stokes property by $340,000 to account for the costs of developing a storm water management system. Stokes does not cite any authority for the proposition that municipalities must account for development costs when calculating the special benefit to a property as a result of a local improvement. Moreover, Macaulay's appraisal calculated the after-LID value of the Stokes property based on the increased development *potential* of the property as a result of the sewer system, again by employing a comparable sales approach. And Stokes did not present any evidence showing that the comparable properties under Macaulay's analysis did not face similar development costs. In short, the Macaulay study provided an adequate basis for the Council to determine the special benefit to the Stokes property as a result of the LID and, thus, Stokes fails to show that the Council's assessment decision was arbitrary or capricious on this basis.

iii. *Proportionality*

Finally, Stokes contends that the Council's reassessment decision was arbitrary and capricious because Macaulay failed to treat the Stokes property in the same manner as a similarly situated property in the LID. Stokes argues that Macaulay failed to assess its property in the same manner as LID property 21 by failing to reduce the usable area of the Stokes property by

23

the area of a potential future storm drainage pond that would need to be installed for development on the property, speculating that the "only viable explanation for $0 assessment against LID No. 21 is that Macaulay considered the significant storm pond as rendering the remainder of the site un-useable." Br. of Appellants (Stokes) at 44-45.

We begin with the presumption that "'an assessment is equal or ratable to an assessment upon other property similarly situated.'" *Abbenhaus*, 89 Wn.2d at 861 (quoting Philip A. Trautman, *Assessments in Washington*, 40 WASH. L. REV. at 118). Stokes fails to overcome this presumption.

Stokes merely speculates that Macaulay's assessment of LID property 21 had reduced the usable portion of the property to account for an *existing* storm water retention pond. And even assuming that this speculative evidence was sufficient to show that Macaulay had, in fact, reduced the usable portion of LID property 21 to account for the *existing* storm water retention pond on the property, it was not arbitrary or capricious for the Council to treat the Stokes property differently based on the lack of an *existing* storm water retention pond on the property. Stokes did not present any evidence that Macaulay had reduced the usable portion of any LID property based on the *potential* need to create a storm water retention pond to facilitate development. Accordingly, we reject this argument and affirm the superior court's order dismissing Stokes' appeal of the Council's reassessment decision.

b. *Rempel*

i. *Before-LID Valuation*

Rempel first contends that the Council acted arbitrarily and capriciously in confirming the reassessment roll because Macaulay's appraisal understated the before-LID value of the

Rempel property. Specifically, Rempel argues that Macaulay failed to cite comparable sales to justify his low valuation of the back 254,360 square feet of the property. We disagree. As with his reassessment of the Stokes property, Macaulay employed a sales comparison approach to estimate the entire before-LID value of the Rempel property. Macaulay's report states that he valued the Rempel property lower than comparable properties without sewer service because the long configuration of the property makes development of the western 6 acres difficult in light of standards for septic systems and other site development costs.[14]

Rempel's remaining challenges to Macaulay's before-LID valuation merely assert that its appraiser's assessment methodology was more desirable. But this argument is insufficient to show arbitrary and capricious action on the part of the Council. *Abbenhaus*, 89 Wn.2d at 859. Because the Macaulay appraisal study supports the Council's action, Rempel cannot show that the Council acted arbitrarily or capriciously in accepting Macaulay's proposed before-LID valuation of the Rempel property. *Abbenhaus*, 89 Wn.2d at 859.

ii. *After-LID Valuation*

Next, Rempel contends that the Council acted arbitrarily and capriciously in confirming the reassessment roll because Macaulay's appraisal overstated the after-LID value of the Rempel property. Again, Macaulay employed a sales comparison approach when determining the after-LID value of the Rempel property. Rempel identifies no error with the Macaulay's after-LID sales comparison approach, instead arguing that its appraiser's valuation method was more

---

[14] Rempel's argument on this issue appears to rely on a portion of the Macaulay analysis that determined the contributory value of improvement on the property, which was unrelated to Macaulay's analysis of the before-LID land value.

desirable.[15]  Accordingly, Rempel cannot show that the Council acted arbitrarily and capriciously in accepting Macaulay's proposed after-LID valuation of the Rempel property.

        iii.  *Proportionality*

        Finally, Rempel contends that the Council's reassessment decision was arbitrary and capricious because Macaulay failed to treat the Rempel property in the same manner as  similarly situated properties in the LID.  Rempel argues that its reassessment was grossly disproportionate to other LID properties because the median increase in value to LID properties was 40 percent whereas Macaulay's proposed reassessment increased the value of the Rempel property by 128 percent.  But in light of unique characteristics of properties within a LID, it is not unreasonable that certain properties would benefit more from a local improvement than others.  Absent some error in Macaulay's appraisal method, the mere difference in benefit to the Rempel property as compared to other properties in the LID, alone, does not show that that the reassessment was impermissibly disproportionate.  Because Rempel fails to show such error in Macaulay's appraisal method, he cannot overcome the presumption that his reassessment was "'equal or ratable to an assessment upon other property similarly situated.'"  *Abbenhaus*, 89 Wn.2d at 861 (quoting Philip A. Trautman, *Assessments in Washington*, 40 WASH. L. REV. at 118).  He therefore fails to demonstrate that the Council's reassessment decision was arbitrary or

---

[15] Rempel also appears to argue that Macaulay improperly relied on a listing price for the sale of the Rempel property to justify his after-LID valuation.  Even assuming that such reliance is improper, there is no evidence that Macaulay relied on the listing sale price in determining the after-LID value of the Rempel property.  Macaulay's appraisal report merely contains a sales history section that notes the property is listed for sale at $1,750,000 plus the original LID assessment for a total asking price of $2,627,000.

capricious. Accordingly, we affirm the superior court's order dismissing Rempel's appeal of the Council's reassessment decision.

B.    *Docken Petitioners (Duncan, Masters/Schmidt, Brickhouse, Suelo Marina, Docken)*

    1. *Presumptions and Burdens*

Similarly to Stokes and Rempel, the Docken Petitioners assert that the Council's reassessment decision was founded on a fundamentally wrong basis because the Council applied improper presumptions and evidentiary burdens. In support of this assertion, the Docken Petitioners cite to a draft conclusion of law that was not approved by the Council. But our review concerns the Council's final assessment decision and not a draft conclusion of law that was ultimately rejected by the Council. And the draft conclusion of law is wholly irrelevant to our review of the Council's final assessment decision as we "'are not permitted to speculate on the motives prompting the city council in the enactment of the ordinance, so long as we find it reasonable *upon its face* and within the city's power.'" *Hasit*, 179 Wn. App. at 951 (emphasis added) (quoting *Cont'l Baking Co. v. City of Mount Vernon*, 182 Wash. 68, 73, 44 P.2d 821 (1935)). As we held above, the Council did not rely on presumptions in favor of the City's recommended reassessment but instead relied on the evidence presented to support the recommended reassessment.[16] Accordingly, the Docken Petitioners fail to show the Council acted arbitrarily or capriciously by applying improper presumptions or evidentiary burdens.

---

[16] Because we hold that the Council did not rely on presumptions in favor of the City's recommended reassessment, we need not address the Docken Petitioners' argument regarding the evidentiary standard for overcoming these presumptions.

2. *Special Benefit*

a. *Collective Arguments*

All of the Docken Petitioners collectively argue that the Council's reassessment decision was arbitrary or capricious because (1) Macaulay's proposed reassessments failed its own "'Test of Reasonableness,'" (2) Macaulay's proposed reassessments were based on inflated values to comparable pending sales properties, and (3) Macaulay's proposed reassessments lacked any basis in reality as evinced by subsequent values attributed to the properties by the county tax assessor.  Br. of Appellants (Docken) at 37.  On all points, we disagree.

i. *Test of Reasonableness*

Macaulay's reassessment analyses include a "Test of Reasonableness," whereby Macaulay compared his proposed special benefit values to the value increases of properties "in nearby market areas where large infrastructure projects have been completed in recent years, such as Kent."  AR at 3124.  Macaulay determined that the increase in value of properties in comparable markets that underwent infrastructure projects ranged from $1.00 per square foot of land to $2.75 per square foot of land.  The Docken Petitioners argue that because some[17] of Macaulay's proposed special benefit values fall outside this range, Macaulay's special benefit analyses were flawed and, thus, the Council acted arbitrarily and capriciously in accepting Macaulay's proposed reassessments.  We reject this argument.

---

[17] Of the Docken Petitioners, only the Suelo Marina and Masters/Schmidt properties had proposed special benefits values that fell outside the $1.00 to $2.75 per square foot range. Macaulay calculated the special benefit to the Suelo Marina property at $4.00 per square foot with a reassessment value of $2.85 per square foot.  Macaulay calculated the special benefit to the Masters/Schmidt properties at $3.75 per square foot with a reassessment value of $2.45 per square foot.

Macaulay did not employ his "Test of Reasonableness" to calculate the special benefits to LID properties but, rather, merely used the test as a comparison tool. That Macaulay determined some of the Docken Petitioners' properties received a special benefit greater than the average range for properties in similar markets does not, itself, reveal any flaw in Macaulay's special benefits analysis. Accordingly, the Docken Petitioners fail to show arbitrary or capricious action on this basis.

ii. *Inflated Values*

Next, the Docken Petitioners argue that Macaulay's proposed reassessments were flawed because the reassessments were calculated by inflating the value of comparable properties that were pending sale. The Docken Petitioners' argument on this point is difficult to discern. But even accepting that Macaulay had inflated the value of these pending sale properties, there is no evidence that Macaulay used the value of pending sale properties in his sales comparison analysis. Although the reassessment studies for the Suelo Marina, Masters/Schmidt, and Docken properties include charts listing pending sale properties, these properties were not listed among the properties used in Macaulay's sales comparison adjustment grid for calculating the subject properties' after-LID values. Accordingly, the Docken Petitioners fail to show that the Council acted arbitrarily or capriciously in accepting Macaulay's proposed reassessments on this basis.

iii. *County Property Tax Assessments*

Next, the Docken Petitioners argue that the Council's reassessment decision was arbitrary and capricious because their properties have lost value after the May 10, 2011, retrospective reassessment date as shown by subsequent county tax assessments. This argument lacks merit.

The Docken Petitioners cite *Hasit* for the proposition that a municipal council sitting as a board of equalization in a LID assessment proceeding presumes a county tax assessors' valuation of property to be correct unless overcome by clear, cogent and convincing evidence. 179 Wn. App. at 949. In *Hasit*, we cited WAC 458-14-046(4) in support of our holding that the fundamentally wrong basis and arbitrary or capricious standards of review on appeal from a LID assessment decision does not apply at the municipal hearing level. 179 Wn. App. at 948-49. We do not interpret *Hasit*'s reliance on WAC 458-14-046(4) to support the proposition that county tax assessor's property values are presumptively correct measures of special benefits in LID proceedings.[18]

By its terms WAC 458-14-046(4) applies only to county boards of equalization reviewing property tax assessments. In contrast with property tax assessments, LID assessments determine only "the increase in fair market value attributable to the local improvements." *Doolittle*, 114 Wn.2d at 103; Ch. 84 RCW. To the extent that county property tax assessments bear any relation to "the increase in fair market value attributable to the local improvements," the property tax assessments merely go to the weight of evidence supporting the LID assessment valuation. *Doolittle*, 114 Wn.2d at 103. As such, the Docken Petitioners cannot demonstrate that the Council's action concerning the weight of this evidence was arbitrary or capricious. We now turn to the Docken Petitioners property-specific arguments.

---

[18] The Docken Petitioners claim that "[t]here is no presumption of correctness applied to city staff [LID assessment] recommendations" and that the City bears the burden of proving by clear, cogent and convincing evidence that the county property tax assessments are incorrect is clearly contrary to our discussion of applicable presumptions in *Hasit*, decades of Supreme Court precedent cited in support of that discussion, and the legislative directive of the LID statutes. Br. of Appellants (Docken) at 36; 179 Wn. App. at 935-36; *see also* Chapter 35.44 RCW.

a. *Duncan*

The Duncan property owners contend that the Council's reassessment decision was arbitrary and capricious because Macaulay's proposed reassessment (1) recommended a $212,700 reassessment despite Macaulay's determination that the highest and best use of the property after the LID was the existing use of the property, (2) failed to deduct unusable portions of the property from its special benefits calculation, (3) failed to deduct the footprint of an existing building and parking lot from the portion of the land benefitted by the LID, and (4) failed to deduct portions of property that would require supporting infrastructure to facilitate future development. On all points, we disagree.

Regarding the Duncan property owners' contention that it received no special benefit based on Macaulay's determination that the property's existing use was the highest and best use after the LID, Macaulay's reassessment study concluded that the LID provided expansion/redevelopment potential to the property. This conclusion provided the Council with evidence that the Duncan property specially benefitted from the LID and, thus, the Duncan property owners cannot demonstrate that the Council acted arbitrarily or capriciously in so finding.[19] *Abbenhaus*, 89 Wn.2d at 859-61.

Regarding the contention that Macaulay failed to deduct unusable portions of the Duncan property from his special benefits analysis, the Macaulay study stated that Macaulay physically inspected the property and reviewed soils/topographical maps to determine that 4.62 acres of the property was unusable, an increase from the 2011 assessment's determination that only 2.36

---

[19] Because the Council had evidence that the Duncan property was specially benefitted by the LID, the Duncan property owners related due process claim fails.

acres of the land was unusable. The Duncan property owners assert that Macaulay's determination was flawed based on the City's critical area maps, which the Duncan property owners assert show 6.48 acres of unusable land. But it is impossible to determine from this map the precise area of the Duncan property that could be feasibly developed. Because the Macaulay study provided evidence supporting the Council's reassessment decision as to the usable area of the Duncan property, the Duncan property owners fail to demonstrate that the Council acted arbitrarily or capriciously on this basis.

Regarding the contention that Macaulay failed to deduct from his special benefit analysis portions of the property already supporting an existing building and parking lot, the Duncan property owners fail to provide adequate argument, or any supporting legal authority, to show how this area of the property was not specially benefited from the LID. To the extent that the Duncan property owners are asserting that these portions of the property did not specially benefit from the LID because the existing use of these portions were at their highest and best use after the LID, that argument ignores Macaulay's determination that the existing use could be expanded as a result of the LID. Accordingly, the Duncan property owners fail to demonstrate arbitrary or capricious action on this basis.

Finally, we reject the contention that Macaulay's special benefit analysis was flawed for failing to deduct from his special benefit analysis additional portions of land that would require supporting infrastructure to facilitate future development. The Duncan property owners merely argue that it is not possible to develop every square foot of land under the City's building codes. But, even accepting this argument, Macaulay's special benefit analysis utilized a sales comparison approach that examined the increase in value to similar properties, which also face

development constraints. Accordingly, the Duncan property owners fail to show any flaw in the Macaulay special benefit analysis rendering the Council's reassessment decision arbitrary or capricious.

b. *Masters/Schmidt*

The Masters/Schmidt property owners contend that the Council's reassessment decision was arbitrary and capricious because Macaulay's proposed reassessment (1) failed to deduct from its special benefit estimate the cost of installing sewers lines and obtaining necessary easements to connect to the City sewer system and (2) improperly distributed the costs of the sewer system without evaluating the special benefit to each LID property.

Regarding the contention that Macaulay's proposed reassessments were flawed for failing to deduct the costs of installing sewer lines and obtaining easements, the Masters/Schmidt property owners failed to present evidence sufficient to overcome the presumption that the Council's reassessment decision was correct. The Masters/Schmidt property owners merely cite to aerial maps showing the layout of their parcels, but do not identify any evidence establishing the required length of sewer line or the costs of installing such sewer line. Thus, even assuming without deciding that LID assessments must reduce special benefits for expenses necessary to enjoy the benefit of a local improvement, the Masters/Schmidt property owners failed to produce competent evidence of such expenses at the reassessment hearing to overcome presumption in favor of the City's assessment. *Rogers*, 114 at 230-31. Accordingly, they fail to demonstrate the Council's reassessment decision was arbitrary or capricious on this basis.

The Masters/Schmidt property owners' argument regarding the distribution of LID costs is largely conclusory and difficult to discern. To the extent that this argument relates to

Macaulay's use of the mass appraisal method generally, we approved this method in *Hasit*. 179 Wn. App. at 943-44. Accordingly, as addressed above, the law of case doctrine prevents appellants from challenging the mass appraisal method in this subsequent appeal. *Roberson*, 156 Wn.2d at 41. Moreover, Macaulay's reassessment studies clearly calculated the special benefit attributable to each of the appealing property owners and did not simply distribute the full cost of the sewer improvement to the property owners. Accordingly, the Masters/Schmidt property owners fail to show the Council's reassessment decision was arbitrary or capricious on this basis.

     c. *Brickhouse*

Brickhouse contends that the Council's reassessment decision was arbitrary and capricious because Macaulay's proposed reassessment (1) recommended a $21,270 reassessment despite Macaulay's determination that the highest and best use of the property after the LID was the existing use of the property and (2) failed to deduct from its special benefit estimate the cost of installing sewers lines.

    Regarding Brickhouse's contention that it received no special benefit based on Macaulay's determination that the property's existing use was the highest and best use after the LID, Macaulay's report did conclude that, as improved, the existing use of the property is at its highest and best use. But Macaulay's report also concluded that, with the addition of the LID, the property obtained future development potential for commercial and multifamily mixed use development. That Brickhouse may prefer to utilize the property with its existing use rather than for its development potential does not defeat the special benefit determination. *See Doolittle*, 114 Wn.2d at 93 ("Property cannot be relieved from the burden of a local improvement district assessment simply because the owner devotes it to a use which may not be specially benefitted

by the local improvement."). Accordingly, Macaulay's report provided the Council with evidence that the Brickhouse property received a special benefit from the installation of the LID. As such, Brickhouse cannot show that the Council reassessment decision was arbitrary or capricious.[20] *Abbenhaus*, 89 Wn.2d at 859-61.

Regarding the contention that Macaulay's proposed reassessments were flawed for failing to deduct the costs of installing sewer lines, Brickhouse failed to present evidence sufficient to overcome the presumption that the Council's reassessment decision was correct. Similar to the Masters/Schmidt property owners, Brickhouse declares the purported costs of installing sewer lines without any evidence in support. Although we have declined to address the evidentiary standard for overcoming presumptions in favor of the City at the municipal hearing level, Brickhouse's unsupported declaration clearly falls short. *See Hasit*, 179 Wn. App. at 949 n. 7. To hold otherwise would render the presumption a nullity. Thus, even assuming that LID assessments must reduce special benefits for expenses necessary to enjoy the benefit of a local improvement, Brickhouse failed to produce competent evidence of such expenses at the reassessment hearing to overcome the presumption in favor of the City's assessment. Accordingly, it fails to show the Council acted arbitrarily or capriciously on this basis.

d. *Suelo Marina*

Suelo Marina contends that the Council's reassessment decision was arbitrary and capricious because Macaulay's proposed reassessment (1) determined that the property's existing

---

[20] Because the Council had evidence that the Brickhouse property was specially benefitted from the LID, Brickhouse's related due process claim fails.

use was at its highest and best use before the LID and (2) failed to assign any value to the buildings on the property.

Suelo Marina's contention that it received no special benefit based on Macaulay's determination that the property's existing use was the highest and best use before the LID is meritless. For the reasons set out above, that the Suelo Marina property was at its highest and best use *before* the LID does not defeat the conclusion that the property received a special benefit as a result of the LID.[21]

With regard to the second claim, Suelo Marina argues only that Macaulay lacked a foundation for finding the existing buildings worthless because he did not personally inspect the property as part of his original 2011 assessment recommendations. We fail to see how this lack of foundation supports Suelo Marina's argument in this current appeal, as Macaulay inspected the property as part of his 2014 reassessment recommendations. Moreover, Suelo Marina fails to cite any evidence in the record showing the buildings' value. Accordingly, it did not overcome the presumption that the reassessment was correct on this point. As such, Suelo Marina does not show that the Council's reassessment decision was arbitrary and capricious on this ground.

e. *Docken*

The Docken property owners contend that the Council's reassessment decision was arbitrary and capricious as to parcel 131 because Macaulay's proposed reassessment (1) determined that the property's existing use was at its highest and best use before and after the LID, (2) failed to lay a foundation for his opinion as to the property's soil conditions, and (3)

---

[21] Because the Council had evidence that the Suelo Marina property was specially benefitted from the LID, the Suelo Marina property owners related due process claim fails.

failed to deduct the footprint of an existing buildings and parking lots from the portion of the land benefitted by the LID. Additionally, the Docken property owners contend that the Council's reassessment decision was arbitrary and capricious as to parcels 133 and 140 because Macaulay's proposed reassessment (1) understated the properties' before-LID values and (2) assumed combining the parcels when determining special benefits. On all points, we disagree.

i. *Parcel 131*

Regarding the Docken property owners' contention that it received no special benefit based on Macaulay's determination that the property's existing use was the highest and best use before the LID, the contention is meritless because the determination that a property was at its highest and best use *before* the LID does not defeat the conclusion that the property received a special benefit as a result of the LID.

Regarding the Docken property owners' contention that it received no special benefit based on Macaulay's determination that the property's existing use was the highest and best use after the LID, the Macaulay study determined that the LID provided parcel 131 with future commercial/multifamily mixed use development potential. Thus, Macaulay's report provided the Council with evidence that parcel 131 was specially benefitted from the LID. Accordingly, the Docken property owners cannot show that the Council reassessment decision was arbitrary or capricious on this basis.[22] *Abbenhaus*, 89 Wn.2d at 859-61.

Regarding the Docken property owners' contention with the basis for Macaulay's opinion regarding poor soil conditions, Macaulay noted in his original 2011 summary assessment report

---

[22] Because the Council had evidence that the Docken property was specially benefitted from the LID, the Docken property owners related due process claim fails.

that Pierce County Health Department officials' reports of numerous complaints regarding septic system failures in the LID area, coupled with poor soil conditions including wetlands, clay content, and a high water table, make it impossible to achieve maximum development density under the then current zoning regulations. Even assuming that this did not establish an adequate foundation for Macaulay's opinion regarding the soil conditions of parcel 131, the Docken property owners did not present any competent evidence to overcome the presumption that the City's recommended reassessment was incorrect on this ground. On this issue, Docken's written objection contains only a declaration from one of the Docken property owners stating, "I disagree with the City Consultant's tentative assertion that 'soil conditions and probable Pierce County Health Department requirements' prevent attaining the highest and best use of the land." AR at 818-19. A mere disagreement as to an appraiser's opinion does not constitute evidence sufficient to overcome the presumption in favor of a City's assessments. Accordingly, the Docken property owners cannot show that the Council reassessment decision was arbitrary or capricious on this ground.

As with the Duncan property owners, the Docken property owners fail to provide adequate argument or legal authority in support of their contention that existing buildings and parking lots on its property did not specially benefit from the LID. To the extent that the Docken property owners are asserting that these portions of the property did not specially benefit from the LID because the existing use of these portions of the property were at their highest and best use after the LID, that assertion ignores Macaulay's determination that the LID provided potential for upgrading/renovation to more intensive uses of the property improved with the

38

existing buildings. Accordingly, the Docken property owners do not show that the Council reassessment decision was arbitrary and capricious on this ground.

ii. *Parcels 133 and 140*

Regarding the Docken property owners' contention with Macaulay's before-LID valuation, the owners do not identify any specific error with Macaulay's sales comparison approach, instead relying on its own appraiser's opinion that Macaulay understated the before-LID value of the property when compared to Macaulay's valuation of a similar LID property. But, an appraiser's contrary assessment determination, alone, is an inadequate basis upon which to overturn the Council's assessment decision on appeal. *Abbenhaus*, 89 Wn.2d at 859.

Finally, the Docken property owners rely on our Supreme Court's decision in *Doolittle*, 114 Wn.2d 88, to support the argument that Macaulay improperly considered the potential future integrated use of parcels 133 and 140 when calculating the parcels' special benefit. This reliance is misplaced. The *Doolittle* Court did not create a bright-line rule that separate parcels could not be assessed as a single lot when determining special benefits. Instead, the *Doolittle* court held that separate parcels could be assessed as a single lot when determining special benefits if the following three conditions are met: (1) unity of ownership, (2) contiguity of the parcels, and (3) unity of use. 114 Wn.2d at 94-96.

There is no question that parcels 133 and 140 are contiguous and have unity of ownership. And the Docken property owners did not raise any issue regarding unity of use at the reassessment objection hearing or on appeal, instead relying on its incorrect interpretation of *Doolittle.* As such, we hold that the Docken property owners have failed to show that Macaulay improperly considered the potential future integrated use of parcels 133 and 140 when

calculating special benefits to the properties. Accordingly, they fail to show that the Council's reassessment decision was arbitrary and capricious on this ground.

IV. FAILURE TO PRESENT REBUTTAL EVIDENCE ARGUMENT WAIVED

The Docken Petitioners present the following assignment of error:

Once property owners present evidenced [sic] on the issue of special benefits and the presumptions in favor of a municipality disappears, did the City meet its burden to introduce competent evidence of benefit when the City presented no rebuttal evidence after the property owners' presentation? NO.

Br. of Appellants (Docken) at 2. But, the Docken Petitioners fail to present any argument in support of this assignment of error regarding the timing of the City's presentation of evidence. Accordingly, that assignment of error is waived. RAP 10.3(a)(6); *Olympic Tug & Barge, Inc. v. Dep't of Revenue*, 188 Wn. App. 949, 959 n. 9, 355 P.3d 1199 (2015), *review denied*, 184 Wn.2d 1039 (2016).

V. STATEMENTS FROM 2011 HEARING

Next, the Docken Petitioners assert that the Council's decision to admit evidence of statements made by property owners during the original assessment hearing violated their constitutional right to due process because those statements were made without the benefit of constitutionally adequate time to gather evidence for the original hearing. This argument is difficult to discern and lacks any citations to legal authority in support. The Docken Petitioners appear to argue that the Council improperly relied on a statement from one of the Duncan

property owners during the original assessment hearing that she believed the proper special benefit value to her property should be $293,470.[23] This argument lacks merit.

Contrary to their assertion on appeal, the Docken Petitioners neither objected to the City attorney questioning the Duncan property owner about her prior statements at the original assessment hearing nor requested that the Council exclude the transcripts from the original hearing from the administrative record. Rather, *after* the Duncan property owner completed her testimony regarding her prior 2011 statements in response to the City's attorney's questioning, counsel for the Docken Petitioners stated that she wanted to "supplement . . . Ms. Duncan's testimony" and argued that it was unfair for the City's attorney to use her prior testimony because that testimony was made without the benefit of constitutionally adequate time to gather evidence of what the proper assessment value should be for her property. AR at 662. At best, counsel for the Docken Petitioners argued that the Counsel should give little weight to the Duncan property owner's prior testimony due to the City's constitutionally inadequate notice of the prior hearing. Because the Docken Petitioners did not request the Council to exclude such prior testimony from the record, they cannot show that the Council erred by failing to do so. Accordingly, we reject the Docken Petitioners' due process claim.

VI. APPEARANCE OF FAIRNESS DOCTRINE

Finally, for the first time on appeal, the Docken Petitioners argue that City Manager Mark Bauer's attendance at the Council's executive session, in which the Council deliberated on the property owners' reassessment objections, violated the appearance of fairness doctrine. The

---

[23] Even if we were to agree with the Docken Petitioners that the Council improperly considered the Duncan property owner's statements, we fail to discern how such error would invalidate the reassessments as to the other property owners.

No. 48028-0-II

Docken Petitioners, however, fail to identify any evidence in the record that Bauer had attended the Council's executive session. The Docken Petitioners also fail to identify any evidence in the record that they had objected to Bauer's attendance at the Council's executive session or any reason why they should be relieved from the duty to object. Claims of bias or violations of the appearance of fairness doctrine cannot be raised for the first time on appeal. *Club Envy of Spokane, LLC v. Ridpath Tower Condominium Ass'n*, 184 Wn. App. 593, 605, 337 P.3d 1131 (2014). Accordingly, we do not further address this issue.

We affirm the superior court's order dismissing the property owners' appeal from the Council's reassessment decision.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Bjorgen, C.J.

_____
Melnick, J.

42